(70 South. 871)

No. 21819.

REEVES v. DEAN.

(Feb. 12, 1916. Rehearing Denied Feb. 21, 1916.)

*(Syllabus by Editorial Staff.)*

1. ELECTIONS ⊛➞154 — PRIMARY ELECTION CONTEST—PLEADING.

Allegations in the petition in a primary election contest, that one of the clerks solicited a number of voters capable of preparing their own ballots and assisted them in preparing the ballots, and also that the clerk assisted 22 persons in preparing their ballots, which were cast for defendant, failed to state a cause of action where it was not alleged that the 22 voters were among those who did not make oath that they were unable to prepare their ballots or request that the clerk assist them, or who were unable to prepare their ballots.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ⊛➞154.]

2. ELECTIONS ⊛➞154 — PRIMARY ELECTION CONTEST—PLEADING—BALLOT BOXES.

Allegations of the petition in a primary election contest, that a ballot box was not sealed by the commissioners, stated no cause of action where it did not appear that defendant, though clerk of the district court, was responsible for the omission.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ⊛➞154.]

3. ELECTIONS ⊛➞154 — PRIMARY ELECTION CONTEST — PLEADING — CUSTODY OF BALLOT BOXES.

Allegations in such petition, that a ballot box was delivered to defendant, stated no cause of action where it appeared that he was clerk of the district court and legal custodian of the ballot boxes.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ⊛➞154.]

4. ELECTIONS ⊛➞154 — PRIMARY ELECTION CONTEST—PLEADING—MARKED BALLOTS.

Allegations in such petition, that at least 12 of the ballots cast in a certain ward for defendant were marked by writing on them, and also that in addition to these 12 at least half of all the ballots in the box were marked by failure to detach numbered slips from them, failed to state any cause of action where it was not alleged that the ballots bearing the numbered slips were cast for defendant, or what was the total of the votes cast in the ward or the number cast for each.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ⊛➞154.]

5. ELECTIONS ⊛➞126 — PRIMARY ELECTION—BALLOTS.

Where the primary election commissioners had counted and tabulated the ballots cast for parish officers, they properly refused to count a ballot cast for parish officers, thereafter found in the box provided for ballots cast for state officers.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. ⊛➞126.]

6. ELECTIONS ⊛➞126 — PRIMARY ELECTION CONTEST—ILLEGAL BALLOTS.

That two sample ballots were used by voters voting for defendant at a primary election, could not invalidate his nomination where it appeared that such votes did not affect the result of the election.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. ⊛➞126.]

7. ELECTIONS ⊛➞126 — PRIMARY ELECTION CONTEST—RECOUNT OF BALLOTS—ESTOPPEL.

Where, in a primary election contest, it appeared that the ballot boxes, unsealed, were properly delivered and deposited in the office of the clerk of the district court in his absence, and that thereafter the boxes containing the ballots cast for parish officers were left by the chairman, and later by the secretary, of the

Democratic executive committee, in places readily accessible to the public, in the mistaken belief that they contained the ballots cast for state officers, defendant, though the incumbent of the office of clerk of the district court and custodian of the ballot boxes, was not estopped from objecting to the ballots being recounted in court.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. ☞126.]

Appeal from Twenty-Fifth Judicial District Court, Parish of St. Helena; R. S. Ellis, Judge.

Primary election contest by Charles C. Reeves against John B. Dean. From a judgment for defendant, plaintiff appeals. Affirmed.

Purser & Magruder, of Amite, for appellant. Wm. H. McClendon and Ponder & Ponder, all of Amite, for appellee.

O'NIELL, J. The plaintiff, appellant, contests the primary election held on the 25th of January, 1916, for the Democratic nomination for the office of clerk of the district court and ex officio recorder of the parish of St. Helena. He alleges in his petition that, according to the result announced and promulgated by the democratic parish executive committee, the defendant was declared nominated by a majority of only six votes; but that, if the irregularities and illegalities complained of in his petition be corrected, the result will show that he, petitioner, received a majority of all the legal votes cast, and is entitled to the nomination.

As to the Second ward, the plaintiff complains that the election was irregular and illegal in these respects, viz.: First, that one of the clerks of election solicited voters, who were capable of preparing their ballots, and were registered under the educational qualification, to permit him to assist them in preparing their ballots, and did, in fact, assist a number of them, notwithstanding they failed to make oath that they were unable to make out their ballots, and notwithstanding the poll list showed that they were qualified to prepare their own ballots; and, second, that the clerk assisted 22 voters in preparing their ballots, all of which were cast for the plaintiff's opponent. He also alleges that the polling booth in that ward was not provided with a secret compartment in which the voters could prepare their ballots, but was open to the view of outsiders from certain positions and directions; and that the ballot box, unsealed, and the key to the box, were delivered to the defendant, notwithstanding his interest in the election. The contestant contends that the ballots contained in that box should therefore be declared null and should not be counted, and that the result will be to reduce the defendant's majority 15 votes and leave a majority of 9 in favor of the plaintiff.

As to the Fourth ward, it is alleged that at least 12 voters who voted for the defendant marked their ballots, and thus violated the Australian ballot and the primary election law, by writing on the ballots the name of a candidate for the office of constable; and that, in addition to them, at least half of all the ballots in the box were marked by the fact that the numbered slip, which should have been detached, was left on the ballot. The plaintiff therefore alleges and contends that all the ballots thus marked should be declared null, and should not be counted.

As to the First ward, the allegation is that the plaintiff is informed and believes that two sample ballots were cast for the defendant, and were counted by the commissioners.

And, as to the Third ward, it is alleged that, after the commissioners had counted the ballots in the box provided for the parish ticket and made out the tally sheet, they opened the box containing the ballots cast for the nominees for state offices and found therein a ballot cast for the plaintiff, which should have been deposited in the box provided for the parish offices, which ballot

the commissioners, therefore, refused to add to the vote cast for the plaintiff.

On the day and at the hour fixed by law for the trial of the case in the district court, the defendant appeared and filed an exception of no cause of action, which was maintained as to some of the plaintiff's complaints and referred to the merits as to others. The plaintiff and the defendant both reserved bills of exception to the ruling of the court. The plaintiff then filed a supplemental petition, which, on objection by defendant's counsel, was not allowed by the court, because it was filed too late. The defendant then filed an answer, which was objected to by the plaintiff's counsel as being too late, but was allowed by the court. The supplemental petition, if considered, would not add any material allegations to those contained in the original petition. The court's ruling, disallowing the supplemental petition, therefore, cannot affect our decision. The defendant's answer was filed several hours after the time fixed by law for a defendant to answer the petition in an election contest. The ruling made in this instance, however, will not affect our disposition of the case.

On the trial, the plaintiff offered in evidence, in support of the allegations of his petition, the ballot boxes from the Fourth, Second, and Third wards, and asked that they be opened and the ballots inspected and counted. The defendant's counsel objected to the opening of the boxes, on the ground that they had not been in the custody of the proper officer, but had remained unsealed, in the possession of persons not authorized to have them, and had been subject to being tampered with. The objection was sustained and plaintiff reserved a bill of exceptions. The note of evidence also discloses that the plaintiff "proffered two yellow tickets," which were not filed in evidence and are not in the record, presum-

ably because they were in one of the ballot boxes. The plaintiff then submitted the case without further evidence. Judgment was rendered against him, and he has appealed.

[1] The first question to be considered is whether the plaintiff's petition discloses a cause of action, and, if so, to what extent, or as to what complaints.

The allegations as to the election in the Second ward, are: First, that one of the clerks solicited a number of voters who were capable of preparing their own ballots, and assisted them in the preparation of the ballots; and, second, that the clerk assisted 22 voters in preparing their ballots, which were cast for the defendant. It is not alleged that the 22 voters whose ballots were cast for the defendant were among those who did not make oath that they were unable to prepare their ballots, or who did not request that the clerk assist them, or who were unable to prepare them. The court ruled correctly in sustaining the exception of no cause of action, as to this complaint.

[2, 3] The court should also have sustained the exception of no cause of action as to the complaint that the ballot box was not sealed by the commissioners, because the defendant was not responsible for that omission. Nor is there any cause to complain that the ballot box was delivered to the defendant, who was the clerk of court and legal custodian of the ballot boxes.

[4] As to the Fourth ward, the plaintiff did not state the number of ballots cast for him or for the defendant, nor the total number cast. The allegations are: First, that at least 12 that were cast for the defendant were marked by the writing on them of the name of a candidate for constable; and, second, that, in addition to these 12, at least half of all the ballots in the box were marked by the fact that the numbered slips were not detached. He alleges that all of the ballots marked, whether by having the name of

a candidate for constable written on them or by bearing the numbered slips, are null and void, and should be rejected. But he does not allege that the ballots bearing the numbered slips, amounting to at least half of the total number of ballots in the box, were cast for the defendant; and, for all we know, they may have been cast for him and might exceed the number of ballots on which the name of a candidate for constable was written by the voters. Hence the allegations of the petition do not disclose a cause of action to contest the election held in the Fourth ward.

[5, 6] There is no merit in the complaint that the commissioners refused to count a ballot found in the box provided for the election or nomination of state officers, after they had counted and tabulated the ballots cast for the parish officers. And, if the allegation be true, that two sample ballots were used by voters who voted for the defendant, that would not, in itself, affect the result of the election. The exception of no cause of action was overruled as to this complaint, but the plaintiff did not offer the First ward ballot box, nor any testimony to prove that two sample ballots had been used.

The ruling of the district judge was correct, in sustaining the defendant's exception to the vague allegation that the polling booth in the Second ward was not provided with a secret compartment wherein the voters could prepare their ballots, or that the secrecy of the ballot was violated, merely because the booth was open to view from certain directions.

In his petition, the contestant alleged that the ballot boxes had remained unsealed in the possession and under the control of his opponent, and that he (plaintiff) should therefore have the right to introduce parol testimony or secondary evidence in proof of the illegalities and irregularities complained of. But he did not demand that right on the trial of the case. On the contrary, he took the position, and introduced testimony to prove, that the ballot boxes had not been tampered with; and, when the court sustained the defendant's objection to the opening of the boxes, the plaintiff offered no further or other evidence in support of his complaints.

[7] The testimony taken on behalf of the plaintiff, as a preliminary to the proposed opening of the ballot boxes, fully sustains the court's ruling, under the doctrine announced in Thornhill v. Wear, 131 La. 739, 60 South. 228. The ballot boxes, unsealed, were brought to the courthouse on the next day after the election, and were delivered to the chairman of the democratic executive committee, who, in the absence of the clerk of court, deposited them in the clerk's office, where they remained until the following Saturday. They were then taken by the chairman of the committee to the place where the committee met and tabulated the returns and promulgated the result of the election. The plaintiff's attorney then requested the chairman of the committee to put the boxes in a safe place, especially the Fourth ward box. The chairman took a box which he thought contained the ballots cast for parish officers, and deposited it in a bank. The other boxes remained in the committee room in nobody's custody for several hours. The secretary of the committee thereafter took them to his barber shop, a room on the ground floor of the courthouse, which was accessible to the public during all hours of the day, and the windows of which were never fastened at night. On the next Monday after the meeting of the executive committee, one of the members, desiring to know the result of the election for constable of the Fourth ward, went to the bank with the secretary of the committee, and, on opening the box which had been deposited there, found that it was the box containing the ballots cast for state officers, which had been deposited there by mistake. They took this box to the secretary's office and barber shop,

and deposited the Fourth ward parish box in the bank. The other ballot boxes remained in the barber shop until they were brought into court for the trial of this case. Under these circumstances, we decline to hold that the contestee in this case was estopped and precluded from objecting to the opening of the ballot boxes and recounting the ballots in court, by reason of his being the clerk of court and the legal custodian of the ballot boxes.

The judgment appealed from is affirmed.