184 So. 350

STATE ex rel. TODD v. MILLS et al.

No. 35102.

Nov. 3, 1938.

Edward M. Heath and Shirley Wimberly, both of New Orleans, and J. Bridger Thornhill, of Monroe, for appellant.

Fink & Fink and George Wesley Smith, all of Monroe, for appellees.

ODOM, Justice.

Will Harvey Todd and Newt V. Mills were opposing candidates for Congress at a second primary election held throughout the Fifth Congressional District on October 18, 1938. According to the complete official returns from every precinct in the district, made by the commissioners and clerks of election, Todd received 21,528 votes and Mills received 21,986 votes, giving Mills a majority of 458.

These results are shown by the official promulgation made by Honorable E. A. Conway, Secretary of State, in the official journal. On a recheck of the returns, the Secretary of State certified that Todd had received only 21,428 votes.

This is a suit by Todd contesting the election. The Fifth Congressional District is composed of fourteen parishes. The contestant alleged in Paragraph V of his petition that the Commissioners of election who served in all the precincts in ten of the parishes—Caldwell, Catahoula, Franklin, Jackson, Lincoln, Morehouse, Ouachita, Richland, Union and West Carroll—and in six precincts of Concordia Parish "incorrectly and irregularly counted, tabulated and returned" the votes cast in said parishes and precincts, and further alleged that "by said incorrect and irregular counts, tabulations and returns the result of the votes in said second primary were made to show that Newt V. Mills received a total of 21,986 votes throughout the Fifth Congressional District and Will Harvey Todd, your petitioner, received a total of 21,528 votes throughout the said Fifth Congressional District".

Paragraph X of plaintiff's petition reads as follows:

"That the Secretary of State tabulated, compiled and promulgated the returns as received by him from the commissioners, as appears from Exhibits 'A' and 'B', attached hereto and made part hereof, and that said tabulation, compilation and promulgation incorrectly and irregularly reflect the actual votes cast in said second primary election, the said returns, tabula-

tion, compilation and promulgation incorrectly and irregularly showing that Newt V. Mills received a majority of the votes cast in said second primary, whereas in truth and in fact your petitioner, Will Harvey Todd, received a majority of the votes cast in said second primary election."

In Paragraph VI of the petition it is alleged that the returns from all the parishes in the District were promulgated in the official journal of the State, and in Paragraph VII, that a certified copy of said promulgation was forwarded by the Secretary of State to Harvey G. Fields, Chairman of the Democratic Executive Committee of the Fifth Congressional District.

It is further alleged that the ballot boxes containing the ballots cast at the said primary election are in the custody and possession of the respective clerks of court of the parishes comprising the Fifth Congressional District, and that said ballot boxes have at all times been in possession of the officials charged by law with their custody, and that neither the said boxes nor the contents thereof have been tampered with. It is further alleged that the production in court of said ballot boxes is material and necessary to prove the allegations of the petition.

It is further alleged that, unless restrained from doing so, the Democratic Executive Committee of the Fifth Congressional District will immediately reconvene for the purpose of nominating the said Newt V. Mills to the office of Congressman and of certifying his name as such to the Secretary of State, and that such action by the Committee will cause irreparable injury, loss and damage to petitioner.

Petitioner prays that the said Newt V. Mills and the Democratic Executive Committee of the Fifth Congressional District be cited and served according to law; that a rule issue commanding the Democratic Executive Committee to show cause, in not less than two or more than ten days from service, why a preliminary injunction should not issue, enjoining and restraining it from certifying the name of Newt V. Mills to the Secretary of State as the Democratic nominee for the office of Congressman; and that upon hearing of said rule a preliminary injunction issue, and that in the meantime a temporary restraining order, temporarily enjoining and restraining the Committee as aforesaid, be issued.

He further prayed that subpoenas duces tecum issue, ordering the custodian of the ballot boxes in each of the various parishes and precincts named to produce said ballot boxes with their contents in court on such day and date as the court might designate, that a recount of the votes in all of the parishes and precincts listed in Article V of the petition be made by the court, and that upon final trial there be judgment in favor of petitioner and against Mills and the Democratic Executive Committee, "declaring your petitioner as the nominee of the Democratic Party for the office of Member of the Seventy-Sixth Congress of the United States of the Fifth Congressional District of the State of Louisiana and ordering said Committee

to certify petitioner as the nominee of the Democratic party for said office, and ordering the Secretary of State to place his name as such upon the official ballot for the general Congressional election to be held on Tuesday, November 8, 1938; and perpetuating the said injunction".

A temporary restraining order was issued immediately as prayed for, and it was ordered that said temporary restraining order be effective from the 24th day of October, 1938, the day on which the suit was filed.

It was further ordered that a rule nisi issue, ordering the Executive Committee to show cause on the 28th day of October, 1938, why a preliminary injunction should not issue as prayed for, and further ordering that subpoenas duces tecum issue, etc. It was further ordered that Newt V. Mills answer the petition within five days after service.

On Friday, October 28, the day set for hearing, counsel for contestant asked leave to file a supplemental and amended petition. Counsel for defendant Mills and the Executive Committee objected to the filing, on the ground that the purpose of it was to change the issues and to defeat the prescription applicable to the case. This objection was sustained by the trial judge, and counsel for plaintiff reserved a bill.

The defendant Mills and the Executive Committee each filed, in the order named, an exception of no cause or right of action, a plea of prescription, a plea of misjoinder, a plea of estoppel, and a motion to vacate the entire proceeding. Subject to these exceptions, pleas and motions, Mills and the Executive Committee filed answers.

The trial judge overruled the plea of prescription but sustained the exception of no cause of action and dismissed plaintiff's suit. From the judgment sustaining the exception of no cause of action and dismissing the suit, the contestant prosecutes this appeal.

Under the view which we take of this case, the only issue raised by the pleadings which it is necessary for us to decide and which we do decide is whether plaintiff's petition sets out a cause of action.

The district judge sustained the exception of no cause of action on the ground, as stated by him in his written reasons for judgment, that:

"Nowhere is fraud charged. Nowhere are the irregularities as to the counting and tabulation and returns complained of set forth specifically and in detail as the Act contemplates. It is merely a pleading of the petitioner's opinion and conclusions."

Section 27 of the Primary Election Law (Act No. 97 of 1922, as amended by Act No. 8, Second Extra Session of 1934, § 4, and as finally amended by Act No. 28, Second Extra Session of 1935) provides that any candidate for office who claims to have been nominated and shall desire to contest the election shall present a petition to the judge, "which petition shall set forth specifically and in detail the grounds on which the contest is based and

the irregularities or frauds of which complaint is made."

In the recent case of Lafargue v. Galloway, 184 La. 707, 167 So. 197, Mr. Justice Land, speaking for this court, said [page 198]:

"It is well-established law in this state, as well as elsewhere, that, to contest an election, not only specific frauds or irregularities must be alleged, but it must also be shown that the frauds or irregularities charged did in fact alter the result."

In support of that statement, he cited four decisions of this court, and also 20 C.J., Sec. 298, p. 231. Numerous other decisions of this court might be cited in support of that statement. Text writers are in accord with this view.

The following text is found in 20 C.J., Sec. 292, p. 228:

"The petition or complaint must apprise the contestee of the particular, facts relied upon as invalidating his election, and general charges of fraud, mistake, intimidation, etc., will be disregarded unless the alleged acts relied on are set out in detail, although it has also been said that a petition in a contest on the ground of fraud which necessarily imports that the fraud entered into the result is sufficient although it fails to charge such facts in terms. A mere allegation that the contestant received more votes than the contestee is insufficient; and according to some authorities the petition should allege the number of votes cast for each candidate."

We quote the following from McCrary on Elections, 4th Edition:

"An application for a recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out in the particular boxes to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all and giving particulars as to none of the boxes. * * * There must be charges of mistake or fraud sufficiently precise to induce the Court to entertain the complaint, and that a general allegation of errors believed to exist was not enough to authorize the perilous experiment of testing the election return by the result of a recount." (Section 435.)

"It is not desirable to encourage groundless or frivolous contests. If the complainants have a solid basis for their complaint they can readily specify the facts upon which they rely and if they have not such solid basis it is better that they be not permitted to proceed." (Section 437.)

"The true rule regulating such proceedings, should be defined so as to advance on the one hand substantial and meritorious, and to arrest on the other, futile and querulous complaints. It is not sufficient to state generally that A received a majority of votes while the certificate was given to B and therefore the complainants charge that there was an undue election. This is but a conclusion, and it is not for the pleader to state conclusions, but facts, from which the Court may draw conclusions. If fraud is alleged the peti-

tion must state the manner in which the fraud was effected, and the number of votes fraudulently received or fraudulently rejected." (Section 437.)

■ Plaintiff's petition shows affirmatively that, according to the returns made to the Secretary of State by the officials appointed to hold and conduct the election, his opponent received a majority of the votes cast. But he alleges that, as a matter of fact, a majority of the votes were cast for him. This, in the absence of specific explanatory allegations deemed sufficient in law, must be regarded as a mere conclusion of the pleader. Plaintiff accounts for the error or mistake by alleging in Paragraph IX of his petition that the votes in all of the parishes and precincts mentioned in Paragraph V of his petition "were by said election commissioners *incorrectly and irregularly counted, tabulated and returned* and that by said *incorrect and irregular counts, tabulations and returns*" it appeared that his opponent received more votes in the Fifth Congressional District than he did. (Italics ours.)

The only allegation in plaintiff's petition to support his general allegation that he received a majority of all the votes cast at said election is the one which recites in general terms that the commissioners "incorrectly and irregularly" counted and tabulated the votes.

■ Such general allegations do not set out a cause of action. The allegations that the commissioners incorrectly counted the votes are not supported by any specific allegations of error or mistake made by the commissioners at any particular precinct or polling place. Plaintiff has made general, blanket allegations that the commissioners at each and every one of the precincts in ten parishes of the district and at six precincts in another parish made mistakes in counting and tabulating the ballots. He does not state in his petition the specific facts or circumstances on which he bases his assertion that the commissioners incorrectly and irregularly counted and tabulated the votes in these particular parishes and precincts. He makes no allegation from which it may reasonably be inferred that mistakes were in fact made. As stated, he makes the bald, blanket allegation tht the commissioners incorrectly counted the votes. He does not say that they intentionally did so, that there was any desire or intention on the part of these election officers to misrepresent the true results of the election, or that there was any motive whatever for their doing so.

■ It is not alleged that contestant was without representation at the polls in the various parishes and precincts named, and in the absence of such allegations we must assume that the Democratic Executive Committees of the respective parishes did their duty and selected commissioners, clerks and other officers to conduct the election in accordance with the Primary Election Law of the State, and that each candidate had a representative, or representatives, at the polls, either as commissioners, clerks or watchers.

Section 25 of the Primary Election Law, provides that primary elections shall be con-

ducted by five commissioners of election at each polling precinct, and that said commissioners shall be commissioned in each parish by the chairman of the respective parish committees. It further provides that there shall be a special deputy sheriff and watchers at each of the precincts and that each of these shall be likewise commissioned. It further provides that the commissioners, the special deputy and the watchers shall take an oath to perform their duties honestly and faithfully It further provides that, if they violate any of the provisions of the act, they shall be deemed guilty of a misdemeanor and punished.

The act further provides that, immediately upon the closing of the polls and before the opening of the ballot boxes, the poll list shall be sworn to as correct by the commissioners of election, and that, after the poll list shall be made out and sworn to as correct, the commissioners shall immediately proceed to publicly canvass the votes; that they shall make a tally sheet in quadruplicate and shall tabulate the votes and sign the same and swear to their correctness and publicly announce the result to the bystanders.

 These commissioners are sworn officers, and their duties are specifically prescribed. The returns which they make under oath, showing the results of an election are presumed to be correct and are entitled to respect. In the absence of specific allegations of fraud, mistake, error or misconduct, the returns which they make will not be inquired into by courts on the blanket, vague and indefinite allega-

tion that they "incorrectly and irregularly" counted and tabulated the votes.

Contestant does not allege that the commissioners and clerks perpetrated a fraud. In fact, there are no allegations of fraud, nor any allegations touching the conduct of the election officers which can be construed as amounting to fraud.

In the case of Edwards v. Logan, a Kentucky case, reported in 69 S.W. 800, it was held that the allegation that the county canvassing board made grave errors in the count of the votes was not sufficient to show a cause of action. Numerous other cases to the same effect might be cited.

The primary election law says that one who desires to contest an election shall present a petition to the court setting forth "specifically and in detail" the grounds on which the contest is based, and our decisions are uniform to the effect that general charges of fraud, mistake, intimidation, irregularities, etc., will be disregarded. If a contestant has a solid legal basis for complaint, he can readily state the specific facts on which he bases his complaint. A petition in which the complaints are couched in general terms can be regarded in no other light than as a mere fishing expedition which courts do not countenance.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, sustaining the exception of no cause of action, filed by the contestee, Newt V. Mills, and the Democratic Executive Committee of the Fifth Congressional

District, and dismissing the suit of the contestant, Will Harvey Todd, and rejecting his demands at his costs, is affirmed.