## LIVAUDAIS v. LEOVY.

### No. 17369.

Court of Appeal of Louisiana. Orleans.

Feb. 12, 1940.

Oliver S. Livaudais, Jr., of New Orleans, for appellant.

A. Giffen Levy and L. H. Perez, both of New Orleans, for appellee.

WESTERFIELD, Judge.

There were three candidates for the nomination of Senator from the Ninth

614

Senatorial District comprising the Parishes of St. Bernard and Plaquemines, in the Democratic Primary Election held January 16th, 1940. The promulgation of the result of the election by the Senatorial District Committee showed the following result: Robert S. Leovy 2,901 votes, Oliver S. Livaudais 2,523 votes, and Walter Thomson 61 votes, and announced that Robert S. Leovy had been nominated over both opponents. The promulgation of the returns by the Committee occurred at 1:30 p. m. on Saturday, January 20th, 1940, and on Monday, January 22nd, 1940, at 6:10 p. m., Oliver S. Livaudais filed this suit against Robert S. Leovy challenging the results announced by the Committee and claiming to have been nominated in the primary. To this petition defendant Leovy filed an exception of no cause of action and a plea of prescription. The exceptions were tried before Honorable Wm. H. Byrnes, Jr. of the Civil District Court for the Parish of Orleans, who was specially appointed by the Supreme Court to try the case and, on January 30th, 1940, both exceptions were maintained and the suit ordered dismissed. Livaudais has appealed to this court.

The petition of contestant alleged his eligibility as a candidate and the facts which we have just stated, and made the following charges:

First, that the Committee's tabulation is erroneous in that a majority of the legal votes cast in the election were in favor of Livaudais and not Leovy and that a correct count of the votes would show that Livaudais had a clear majority over his two opponents.

Second, that the returns from Precinct 1 of Ward 4 of the Parish of Plaquemines, as promulgated, indicates that Leovy received twenty-four votes and Livaudais fifteen votes, whereas in truth and in fact, Livaudais received in that poll twenty-four votes and Leovy received fifteen votes.

Third, that the result, as promulgated by the Committee, should be set aside because the Commissioners of Election and those in charge of the polling booths in several of the precincts through the Senatorial District were guilty of glaring "irregularities and illegal acts".

Fourth, that the polling booths in the First Precinct of the Fifth Ward of the Parish of Plaquemines were not private and that the Commissioners at that poll representing petitioner's opponents offered assistance to the voters without regard as to whether the voters were registered under the educational clause or not, and that no notation was made on the polling list of this fact; that all the votes cast in this poll should be declared null and void or a recount ordered and, if ordered, it would show that a number of spoiled ballots were counted in favor of Leovy and a number of good ballots cast for Livaudais were rejected by the Commissioners as spoiled ballots.

Fifth, that forty-five persons, whose names are given, were illegally assisted in voting in the First Precinct of the Fifth Ward of Plaquemines Parish; that three of these forty-five persons were permitted to vote without being registered; that if these forty-five votes were excluded the result at that poll would show a majority in favor of petitioner.

Sixth, that in Precinct 1 of Ward 2 of the Parish of Plaquemines, a number of ballots in excess of ten were counted for Leovy, which were spoiled, and a number of ballots which were good ballots in favor of Livaudais were rejected as spoiled ballots; that a recount of the votes in said poll would show that petitioner received ten more votes than were awarded to him by the returns.

Seventh, that in Ward 3 and in Precincts 2, 3, and 4 of Ward 4 a large number of spoiled ballots were counted for Leovy and a number of good Livaudais ballots were rejected as spoiled and that a recount of these ballots would show that petitioner received a majority of the votes in each of them.

Eighth, that ten persons, whose names were given, who were not entitled to vote, were allowed to cast their ballots in Precinct 1 of Ward Six of the Parish of Plaquemines; that these persons voted against petitioner and that they received assistance from the Commissioners and that no notation was made of this fact; that if these votes were excluded the result would be changed in favor of petitioner.

Ninth, that in Ward 8 "where petitioner was unrepresented by any commissioner by reason of the fact that his commissioner, John Williams, was intimidated and persuaded not to serve as commissioner, all of the voters who cast their ballots in said poll were assisted without request on their part and regardless of their registration as to qualifications; and no notations of the fact that such assistance was given was made on the polling list. That a recount

of the votes in said precinct polling place will show that a number of ballots were counted for said Robert S. Leovy which were spoiled ballots, while a number of good ballots cast in favor of petitioner were rejected as spoiled ballots".

Tenth, that in the First Precinct of the Seventh Ward of the Parish of Plaquemines, a number of trappers, in excess of twenty, whose names petitioner has not, up to this time, obtained, who were non-residents of the Parish of Plaquemines, were allowed to vote and all were assisted in voting "against petitioner".

Eleventh, that in Precinct 2 of Ward 9, the poll was located in a fisherman's camp on Grand Bayou, an isolated section, and that there were no secret booths where the voters could go to prepare their ballots and all ballots were prepared openly by the Commissioners and for that reason all of the votes cast at that poll should be thrown out and not counted, but if counted, six individuals, whose names are given, who were not citizens of the United States, were permitted to vote and that their votes should be excluded; that all of these illegal votes were cast against petitioner; that Frank Giordano, who acted as Commissioner at the poll, was not authorized to act because he was not a resident of Plaquemines Parish and that he voted against petitioner and his vote should be excluded; that there were no poll or registration books at the polls as required by law, and that a large number of ballots cast were spoiled and, nevertheless, counted in favor of Leovy and a number of good ballots cast for petitioner were rejected as spoiled ballots.

Twelfth, that in the Second Precinct of the Tenth Ward, voters were assisted by the Commissioners of the faction opposed to petitioner regardless of whether they were registered under the educational clause or not and no notation of the fact was made on the polling list as required by law; that a recount of the ballots cast at this poll will show spoiled ballots counted for Leovy and good ballots cast for petitioner rejected.

Thirteenth, "that if petitioner were given the benefit of all of the votes legally cast for him, and if all of the votes illegally cast for the said Leovy, and all of the objections set out in this petition are maintained by this Court, and a recount of the votes cast at said primary election should be ordered under the direction of this Honorable Court, it would be shown that petitioner was and is entitled to nomination as the successful candidate of the Democratic party within the said Ninth Senatorial District, by a majority over both his opponents in said primary election".

Finally, in addition to all other reasons, Leovy, immediately after having been declared the nominee for Senator by the Parish Committee, was also declared to be the nominee for Police Juror from the Fifth Ward of the Parish of Plaquemines and that he accepted both nominations with the result that under Section 4 of Article 19 of the Constitution of the State of Louisiana of 1921, and Act No. 123 of 1921, Ex.Sess., the Enabling Act, the acceptance of the second nomination—that of Police Juror—forfeited his right to the former nomination as Senator from the Ninth Senatorial District.

It will be seen from the foregoing that with the exception of the complaints enumerated by us in the second and sixth paragraphs, the charges made by petitioner may be summarized as follows:

That unregistered and non-resident persons were allowed to vote; that spoiled ballots were counted for Leovy and good ballots cast for petitioner were rejected; that voters who were not entitled to assistance received the same without notation being made on the polling list as required by law; and that returns made by the Commissioners and promulgated by the Committee were incorrect. There is no allegation that the illegal votes complained of were cast for Leovy; in some instances, the charge is made that they were cast against petitioner, but since there were three men in the race, this does not mean that they were cast for Leovy. Nor is there any claim that the illegal voters were challenged and their votes identified by a written protest as required by law. Such general allegations of illegality and irregularities do not show a cause of action. The law requires specific charges of misconduct and illegality and that such improprieties have resulted in the election of the wrong candidate to the prejudice of contestant who would otherwise have been the nominee. See Treadaway v. Plaquemines Parish Democratic Committee et al., La.App., 193 So. 609, this day decided.

In Lafargue v. Galloway, 184 La. 707, 167 So. 197, 198, it was held that:

"It is well-established law in this state, as well as elsewhere, that, to contest an

election, not only specific frauds or irregularities must be alleged, but it must also be shown that the frauds or irregularities charged did in fact alter the result. Lanier v. Gallatas, 13 La.Ann. 175; State v. Mason, 14 La.Ann. 505; Andrews v. Blackman, 131 La. 355, 59 So. 769; Reeves v. Dean, 138 La. 889, 70 So. 871, 20 C.J., Elections, § 298, p. 231.

\* * * * * *

"Likewise, the allegations of paragraph 28 of the petition, that petitioner was deprived of 7 votes in precinct 37, because these votes were 'legally cast for your petitioner that were wrongfully and illegally spoiled and thrown out and not counted,' is a mere conclusion of law, as plaintiff fails to allege any fact showing that the action of the commissioners in declaring the same spoiled was wrongful and illegal.

\* . * * * * *

"A petition in a suit to contest an election which alleges the counting and promulgating of illegal votes states no cause of action, unless it be also alleged for which side votes were counted and promulgated. Lanier v. Gallatas, 13 La.Ann. 175; Reeves v. Dean, 138 La. 889, 70 So. 871; 20 C.J. Elections, § 324, p. 240, footnote 70."

In Bradley v. Neill, 1932, 174 La. 702, 141 So. 382, 383, it was said:

"The Primary Election Law allows the candidates watchers at the polls, and allows the watchers to challenge any voter for any cause. Act No. 97 of 1922, § 25, pp. 191 and 192. And the law also requires that every protested ballot shall have attached to it a memorandum setting forth the name of the voter, the name of the challenger, and the ground of protest. Section 20, p. 188.

"The purpose of the provision is plainly to permit identification of the ballot, and to prevent an election held according to law being anulled by a subsequent inquiry into the manner in which the electors voted, an inquiry necessarily depending upon the testimony of the voters themselves without any opportunity being afforded for successful contradiction. And it is the only method provided by the statute for contesting the legality of the ballots."

In State ex rel. Todd v. Mills et al., 191 La. 1, 184 So. 350, 353, the Court in considering certain general allegations in a contested election suit, said:

"Such general allegations do not set out a cause of action. The allegations that the commissioners incorrectly counted the votes are not supported by any specific allegations of error or mistake made by the commissioners at any particular precinct or polling place. Plaintiff has made general, blanket allegations that the commissioners at each and every one of the precincts in ten parishes of the district and at six precincts in another parish made mistakes in counting and tabulating the ballots. He does not state in his petition the specific facts or circumstances on which he bases his assertion that the commissioners incorrectly and irregularly counted and tabulated the votes in these particular parishes and precincts. He makes no allegation from which it may reasonably be inferred that mistakes were in fact made. As stated, he makes the bald, blanket allegation that the commissioners incorrectly counted the votes. He does not say that they intentionally did so, that there was any desire or intention on the part of these election officers to misrepresent the true results of the election, or that there was any motive whatever for their doing so.

\* * * * * *

"These commissioners are sworn officers, and their duties are specifically prescribed. The returns which they make under oath, showing the results of an election are presumed to be correct and are entitled to respect. In the absence of specific allegations of fraud, mistake, error or misconduct, the returns which they make will not be inquired into by courts on the blanket, vague and indefinite allegation that they 'incorrectly and irregularly' counted and tabulated the votes.

"Contestant does not allege that the commissioners and clerks perpetrated a fraud. In fact, there are no allegations of fraud, nor any allegations touching the conduct of the election officers which can be construed as amounting to fraud.

"In the case of Edwards v. Logan, a Kentucky case, reported in 69 S.W. 800 [24 Ky.Law Rep. 678], it was held that the allegation that the county canvassing board made grave errors in the count of the votes was not sufficient to show a cause of action. Numerous other cases to the same effect might be cited.

"The primary election law says that one who desires to contest an election shall present a petition to the court setting forth 'specifically and in detail' the grounds on which the contest is based, and our decisions are uniform to the effect that general

charges of fraud, mistake, intimidation, irregularities, etc., will be disregarded. If a contestant has a solid legal basis for complaint, he can readily state the specific facts on which he bases his complaint. A petition in which the complaints are couched in general terms can be regarded in no other light than as a mere fishing expedition which courts do not countenance."

In regard to the charges enumerated by us in paragraphs 2 and 6 to the effect that Leovy received nine votes which should have been credited to Livaudais and that ten people voted for Leovy, whose ballots should have been rejected as spoiled, if these errors be rectified, it would result in twenty-eight· more votes being cast for Livaudais. Livaudais,.however, would still be far short of the nomination because out of a total of 5,485 votes, a majority of one would be 2,743. Since Livaudais was credited with 2,523 votes, 28 more would only make his total 2,551, or 192 votes less than a majority.

■ With reference to the concluding paragraph of plaintiff's petition which charges that Leovy forfeited his right to be a candidate for Senator because he accepted the nomination for Police Juror, we find no merit in this contention. The Constitution provides in Section 4 of Article 19 that "No member of Congress, nor person holding or exercising any office of trust or profit under the United States, or any State, or under any foreign power shall be eligible as a member of the Legislature, or hold or exercise any office of trust or profit under the State; nor shall any person hold or exercise, at the same time, more than one office of profit except that of Justice of the Peace or Notary Public. * * *" The office of Police Juror has been held not to be an office of profit and not within the intendment of this clause of the Constitution prohibiting dual office holding. Voorhies v. Fournet, 15 La.Ann. 597; State ex rel. Gorham v. Montgomery, 25 La.Ann. 138. Moreover, Leovy has not yet been installed in either office, being a candidate for both.

■ The Primary Election Law requires that one who contests the result of a primary election must claim to have been nominated. Section 27 of Act No. 97 of 1922, as amended by Section 1 of Act No. 110 of 1934; Section 4 of Act No. 8 of 1934 (2d Ex.Sess.) and Section 1 of Act No. 28 of 1935 (2d Ex.Sess.) Reid v. Brunot, 153 La. 490, 96 So. 43.

Counsel for the contestant in his brief evidences a misunderstanding of this provision of the statute for we read therein the following: "The petition not only alleges that the frauds and irregularities complained of altered the result of the election, but plainly show that the results of the election were in fact altered to the prejudice of petitioner. We give below a revised tabulation of the vote cast based on additions and deductions as set out in the various paragraphs of the petition, which plainly shows that of the legal votes cast at said primary election, the defendant failed by 45 votes to poll a majority over both his opponents, and was clearly not entitled to the nomination given him by said Senatorial Committee, regardless of whatever further difference might be shown by a recount of all of the ballot boxes complained of; * * *".

He then gives a tabulation by wards and precincts to prove this statement and concludes "we respectfully submit that insofar as the above tabulation of itself shows that no candidate has been nominated, the said tabulation being based on the allegations of the petition, that to that extent, regardless of what further differences might be shown by a recount of the entire vote, the petition does disclose a cause of action."

The exception of no cause of action was properly maintained.

The exception of prescription presents a number of interesting questions, but our views relative to the exception of no cause of action render a consideration of the question of prescription unnecessary.

For the reasons assigned, the judgment appealed from is affirmed.

Judgment affirmed.