## DUMESTRE v. FISHER.
### No. 17391.

Court of Appeal of Louisiana. Orleans.
March 18, 1940.

R. A. Dowling, Emerson Bentley, and John J. Jackson, all of New Orleans, for appellant.

Fred A. Middleton, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an election contest growing out of a Democratic Primary which was held for the purpose of selecting a Democratic nominee for the office of Senator from the Tenth Senatorial District, comprising the Parishes of Jefferson, St. John the Baptist and St. Charles.

The contestant, Alexis C. Dumestre, claims that if a proper count of all votes

legally cast had been made, he would have been the nominee. He alleges, however, that various illegalities and irregularities in a number of precincts in the several Parishes resulted in the selection of his opponent, Jules G. Fisher, the contestee, who has been certified by the proper authorities as having received a total of 9733 votes against petitioner's 9437 or a majority of 296 votes. The petition is a lengthy one and in effect charges that in the First Primary held in the District, in which there were four candidates, no one received a majority of the votes cast and the Democratic Executive Committee for that Senatorial District announced that Jules G. Fisher (contestee) and Alexis C. Dumestre (contestant) were eligible to enter a Second Primary, all in accordance with Act No. 97 of 1922, the Primary Election Law; that the date of the Second Primary was fixed for February 20, 1940, and that both Fisher and Dumestre qualified as candidates with the results stated.

It is further alleged that the conduct of the election in Ward 3, Precinct 1 of Jefferson Parish should be invalidated or thrown out for the following reasons:

1. The Commissioners of Election returned more votes on the tally sheets than there were names on the poll list.

2. That votes were counted with the numbered coupons attached.

3. That the polling booths were improperly constructed and located.

4. That on information and belief "several votes, probably more than one hundred, entered the voting booths with other persons and were influenced to and had their ballots marked for your petitioner's opponent".

5. That the ballots were not counted by the Commissioners before the voting began and the unused ballots were not counted at the close of the election.

6. That the numbers on the ballots were not noted on the polling list as required by law.

It is alleged that if the election in this Precinct alone be invalidated it would have the result of causing your petitioner to be selected as the nominee.

In Precinct 2 of Ward 3, Precincts 1 and 4 of Ward 4, Precinct 2 of Ward 6, Precincts 3 and 6 of Ward 8, Precinct 1 of Ward 9 of the Parish of Jefferson and in Precinct 1 of Ward 3, Precinct 1 of Ward 4, and Precinct 1 of Ward 5 of the Parish of St. John the Baptist, it is alleged that the Commissioners of Election deliberately falsified the returns and counted votes for petitioner's opponent which should have been counted for petitioner, and a recount would indicate that more votes were cast for petitioner than given him on the tally sheets and that these additional votes, when added to the votes credited to petitioner, would change the result of the election.

The same charges are made with reference to Precinct 1 of Ward 6 of Jefferson Parish with the addition of the following:

1. A conspiracy existed between the Election Commissioners and other persons to deprive contestant of his civic rights.

2. In furtherance of the conspiracy the Commissioners counted the State ballot before counting the Parish ballot and did not start the count of the Parish ballots until it was known how many votes were necessary to nominate the contestee, Fisher.

3. That the Commissioners took five hundred ballots cast for the contestant and substituted therefor five hundred ballots which had been marked for Fisher.

4. That contestant had no representation at this Precinct and no one representing him was allowed to participate in or witness the counting of the votes.

5. That no poll book receipts were required of voters and no check of the registration book was made to ascertain whether the voter was qualified or not and that unqualified voters were allowed to vote.

6. That a number of persons voted who had not legally obtained poll certificates and contestant was unable to protest their ballots because he was not represented.

For these reasons contestant desires that the entire vote in this precinct be thrown out and, in the alternative, he asks for a recount of the votes, alleging that such a recount would disclose the presence of five hundred illegally substituted ballots fraudulently counted for the contestant Fisher.

The petition concludes with a prayer for judgment declaring that "the White Democratic Primary held on February 20th, 1940, for the Democratic Nomination for the office of Senator of the Tenth Senatorial District of Louisiana in Ward 3, Precinct 1; Ward 6, Precincts 1 and 2 of Jefferson Parish, and Ward 5, Precinct 1 of the Parish of St. John the Baptist, be declared null and void and that the votes

promulgated and tabulated in those particular precincts of those wards as enumerated herein be stricken from the official tabulation or, in the alternative Ward 6, Precinct 1 of Jefferson Parish be recounted and the promulgation of the Tenth Senatorial District Committee of February 24th, 1940, be corrected accordingly."

Petitioner further prays for a recount in all of the boxes in the several Precincts concerning which he makes charges of irregularity in the voting, and finally, he asks to be declared the nominee in place of his opponent Jules Fisher.

To this petition contestee, Jules G. Fisher, filed exceptions of vagueness, nonjoinder of parties defendant and of no right or cause of action, and by way of answer he denied generally the charges of fraud and asked for the dismissal of plaintiff's suit.

The exceptions were referred to the merits by the trial judge, who announced from the Bench that he would consider the charges involving each precinct and the evidence offered in substantiation thereof, before ruling upon petitioner's request for a recount in the several precincts.

In regard to the prayer of contestant that the election in certain designated precincts be declared void for the reasons stated in his petition, we observe that the contestant is not entitled to select certain boxes for elimination from the total count of the votes cast in the election, no matter what charges may be made concerning the conduct of the election or the election commissioners in those precincts, for the reasons given by the trial judge in his able opinion in this case.

"To order such precincts eliminated from the tabulation if irregularities and fraud were found therein would be tantamount to the disfranchisement of every voter in said precinct ordered eliminated, and if the votes, as tabulated, were as cast by the electors, would, or might, defeat the will of the people."

A recount of the ballots cast in Precinct 1 of Ward 6 of the Parish of Jefferson was ordered which, when completed, resulted in reducing Fisher's lead in that precinct from 693 votes to 659 votes.

The charge that in this precinct five hundred illegal ballots had been substituted for those cast by the voters at the polls was not sustained by any evidence. There was some testimony to the effect that five hundred more ballots were issued to this polling place by the Secretary of State than were accounted for at the conclusion of the voting. One of the Commissioners of Election, however, testified that the ballots were not counted before the voting began and that, therefore, they were unable to say whether the additional 500 votes unaccounted for were in the ballot box when they received it or not. In any event, there is no proof that any illegal votes were substituted and the most that petitioner can claim as a result of the recount of this box is the loss to his opponent of 34 votes.

No other boxes were ordered recounted, the court holding that no extraneous evidence was tendered in support of the charges of illegality and that the mere offer of the boxes themselves as proof of the allegations of plaintiff's petition was insufficient to order an examination of their contents in the expectation of revelations to sustain the charges made in the petition. In other words, the fact that it was alleged, concerning each of the other boxes, in practically the same manner, that the Commissioners of Election had deliberately falsified the returns and counted votes for petitioner's opponent which should have been counted for him, and that a proper recount would show that the contestant was entitled to a greater number of votes than those credited to him, was simply the statement of a conclusion without specific allegations of specific fraud. The ruling of the trial court was correct, for it has been held on numerous occasions that:

"An application for a recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out in the particular boxes to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all and giving particulars as to none of the boxes * * *. There must be charges of mistake or fraud sufficiently precise to induce the Court to entertain the complaint, and that a general allegation of errors believed to exist was not enough to authorize the perilous experiment of testing the election return by the result of a recount." McCrary on Elections, 4th Edition, Sec. 435, cited with approval by our Supreme Court in State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350, and in Landry v. Ozenne, La.Sup., 195 So. 14, decided March 12, 1940.

In the Landry case the Court said: " * * * every consideration of public policy should influence the Court to be cautious before ordering the opening and recounting of ballot boxes."

In Molero v. Rowley, La.Sup., 194 So. 7, decided February 9, 1940, we find the following: "The only allegation of irregularity in the election was the plaintiff's claim that 200 persons, who had not signed the 1938 poll book and who had not secured the 1938 poll certificates, were permitted to vote for the defendant. This allegation is general and does not name the person so voting or the precinct each of them voted in. In the first place, the allegation does not set forth specifically the names of the persons, what precinct each of them voted in or what commissioners permitted them to vote. It does not apprise the defendant of the particular facts relied on and a charge of fraud of this general nature, without setting out in detail the acts relied on, will be disregarded. Lafargue v. Galloway, 184 La. 707, 167 So. 197; State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350. In the second place, there is no allegation that the ballots were protested as required by Section 20 of Act No. 97 of 1922 as amended (Dart's General Statutes of Louisiana, 1939 Ed., Section 2670)."

In the recent case of Livaudais v. Leovy, La.App., 193 So. 613, 615, this Court said: "There is no allegation that the illegal votes complained of were cast for Leovy; in some instances, the charge is made that they were cast against petitioner, but since there were three men in the race, this does not mean that they were cast for Leovy. Nor is there any claim that the illegal voters were challenged and their votes identified by a written protest as required by law. Such general allegations of illegality and irregularities do not show a cause of action. The law requires specific charges of misconduct and illegality and that such improprieties have resulted in the election of the wrong candidate to the prejudice of contestant who would otherwise have been the nominee. See Treadaway v. Plaquemines Parish Democratic Committee et al., La.App., 193 So. 609, this day decided."

■ Ordinarily, voters who receive assistance to which they are not entitled, or whose names are not on the poll list, or who are otherwise disqualified, should be challenged at the time they offer to vote. Bradley v. Neill, 174 La. 702, 141 So. 382; Treadaway v. Plaquemines Parish Democratic Committee et al., La.App., 193 So. 609. However, where the contesting candidate is unrepresented at the poll and, consequently, without opportunity to protest, and it is alleged that a large number of voters received assistance who were not entitled to it, that the commissioners of election fraudulently counted the votes; that but for such fraud and illegality in this poll the contestant would have received the nomination, as is charged here with reference to Precinct 1 of Ward 6 of Jefferson Parish by the contestant, a case is stated which, if proven, would justify the annulment of the entire election.

In Vidrine v. Eldred, 153 La. 779, 96 So. 566, 567, the Court said:

"Plaintiff claims that the primary election for the Democratic nominee for mayor of Oakdale was a nullity, and, in the alternative, that he would be the nominee had the votes been properly counted.

"As he claims the nomination, he shows a right of action; and, since it may happen that the court may find that he has not received the majority of the votes, and may yet find that the election is a nullity and so declare it, it follows that he may in the alternative pray to have the election annulled. And we cannot see that it makes any difference that he changes the order, though not the substance, of his alternative demands. Andrews v. Blackman, 131 La. [355], 359, 59 So. 769."

■ Here, however, there is no prayer for the annulment of the election as a whole, but only for the elimination of the vote cast in certain precincts. For the reasons which we have heretofore stated, this cannot be granted.

It results from what has been said that the case of the contestant must fail, consequently, and

For the reasons assigned the judgment appealed from is affirmed.

Judgment affirmed.

McCALEB, Judge (concurring).

While I believe that this case was correctly decided in the court below, I am not in accord with all of the reasons given in the majority opinion for the affirmance of the judgment.

I fully coincide with the view expressed by my associates that, in determining who was the successful candidate, the court is without authority to invalidate, and eliminate from consideration, the returns from

any one or more election precincts in the district on the ground that fraud was committed by the election commissioners.

The only other question involved in the case has reference solely to the action of the trial judge in refusing to reopen and recount the ballot boxes of certain precincts in view of the contestant's charge that the votes therein were deliberately miscounted to his detriment by the commissioners of election. The allegations of the petition with respect to these precincts are couched in substantially the same language. For example, in article 10 of the petition, the contestant avers that in Ward 3, Precinct 2 of Jefferson Parish, "the commissioners deliberately falsified the returns and that there were cast for him 104 votes more than were counted for him by the commissioners of election and tallied and returned for him to the Tenth Senatorial District Committee". In the majority opinion, it is declared that these charges were "simply the statement of a conclusion without specific allegations of specific fraud". McCrary on Elections, 4th Ed., Section 435; State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350; Landry v. Ozenne, 195 So. 14, decided by the Supreme Court on March 12, 1940, not yet reported [in State reports]; Molero v. Rowley, 194 So. 7, decided by the Supreme Court on February 9, 1940, not yet reported [in State reports]; Livaudais v. Leovy, La.App., 193 So. 613; Bradley v. Neill, 174 La. 702, 141 So. 382; and Treadaway v. Plaquemines Parish Democratic Committee et al., La.App., 193 So. 609, are cited in support of the conclusion reached.

■ I am unable to agree with this view and I do not believe that it is sustained by the authorities cited in the majority opinion. This is not a case where the contestant seeks to have certain votes, which he claims were illegally cast and counted, eliminated notwithstanding his failure to protest, nor is it a case where the contestant fails to allege that the illegal votes were given to his opponent. On the contrary, the contestant claims that the commissioners deliberately and fraudulently miscounted the votes and tallied votes in favor of his opponent which were actually cast for him. This, in my conception, is a succinct statement of fact which, if supported by evidence of its truth, would authorize a recount of the ballots in the precincts where the fraudulent miscount is said to have occurred. I cannot see how

the averments could be more specific unless it be that the contestant is required to plead his evidence. Surely, it cannot be fairly said that it was intended by the Primary Act (even though it prescribes that the charges be stated with clarity and precision) that the contestant should be forced to supply his opponent with a detailed account of the proof he will submit at the trial.

■ While I disagree with the majority opinion as to the sufficiency of the allegations of Dumestre's petition, I fully subscribe to the conclusion reached by the district judge that the ballot boxes of the precincts complained of should not have been reopened and recounted because the contestant failed to offer any evidence whatever (except as to Precinct 1 of Ward 6 of Jefferson Parish where the court ordered a recount of the votes in that ballot box) to sustain the charges made by him in his pleadings. All of these charges were denied by Fisher in his answer. It was therefore incumbent upon Dumestre to adduce some extraneous proof to support his allegations. Since he was unable to do so, the district judge properly refused to order the ballot boxes reopened.

For the reasons given, I respectfully concur in the decree.

JANVIER, Judge (concurring).

Through inadvertence on my part, I attached my concurrence to what has been rendered as the majority opinion. I intended to concur in the decree and in practically all of what appears in the opinion, but I did not agree with what has been said concerning the boxes of which Mr. Dumestre requested a recount.

■ The author of the majority opinion states that the district judge correctly ruled that the allegations of fraud, or of miscounting, were not sufficient to authorize the requested recount. I do not agree with that statement, as I think that those allegations are sufficiently detailed and specific. Nor do I agree that the district judge ruled that these allegations were not sufficient. I do agree that the district judge was correct in his ruling that those boxes should not be recounted without some proof of fraud or of miscounting other than what might be found in the boxes themselves, and I agree that the district judge was correct, when no such proof was

offered, in refusing to order the recounting of the ballots in those boxes.

With this exception I concur in the opinion and I concur fully in the decree.