(96 South. 566)

No. 25957.

**VIDRINE v. ELDRED.**

(May 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. Elections ⬸154(2)—One claiming nomination may contest primary election.

One who claims the nomination for an office has right of action to contest primary election.

2. Elections ⬸154(2)—Contestant may claim nomination, or in the alternative ask that election be declared nullity, and it is immaterial which alternative is placed first.

One contesting primary election and claiming nomination may, in the alternative ask, that election be annulled, and it is immaterial that he changes the order of his demands and asks that the election be annulled, or, in the alternative, that he be declared the nominee.

3. Elections ⬸153—Primary election not declared nullity for insufficient advertising in view of number of voters.

When nearly 500 voters out of about 700 registered in population of about 5,000 took part in primary election, it will not be declared a nullity for want of sufficient advertising.

4. Elections ⬸158—Failure to properly certify returns not ground for setting aside primary election when there has been free expression of will.

Irregularities in conduct of primary election such as failure of commissioners of election to properly certify the returns will not affect validity of the election when electors have had fair and free opportunity to express their will and have done so.

5. Elections ⬸158—Mayor whose duty it was to see proper ballots were furnished estopped from questioning validity.

While requirement of Act No. 97 of 1922 that primary election ballots shall contain detachable numbered slip is mandatory, candidate who, as mayor of the municipality, was under duty to see that proper ballots were printed and issued, is estopped from questioning their validity on this ground.

6. Elections ⬸126(5) — Signature to ballot, written name of candidate, or marks outside the square require rejection of ballot.

Ballots signed by the voter or containing names of candidates written, or additional cross marks, checks, or lines outside the square, or visible erasures, will be rejected as marked ballots.

7. Elections ⬸126(5)—Crossing out names or use of wrong mark, or mark in wrong place, or written with ink, requires rejection of ballot.

As law requires casting of vote by marking with black lead pencil a cross mark in square opposite candidate's name, ballots in which choice is indicated by scratching out names or by check marks, stars, or the word "yes," or by making cross mark with ink or putting it outside the square, will be rejected.

8. Elections ⬸126(5)—There must be bona fide effort to make cross mark with black lead pencil in square opposite candidate's name.

While cross mark on ballot need not be perfect in form and may resemble an X in print or in script, it must be a bona fide effort to make a cross mark with black lead pencil in square

opposite and to the right of the candidate's name.

**9. Elections ⬤⟹126(5)—Trivial mark probably made in counting does not require rejection of ballot.**

Ballot perfect except for trivial scratch in ink, evidently not made by the voter, but by some one handling it in the count or recount, will not be rejected.

**10. Elections ⬤⟹126(5)—Voting for more candidates than required does not wholly spoil ballot.**

Under special provision of the primary law that voting for less than required number of candidates shall not spoil a ballot in toto, voting for more is not identification mark,, though spoiling the ballot for the particular office.

**11. Elections ⬤⟹126(6) — Ballot of absentee voter rejected when not obtained from clerk of court.**

Vote cast under the absentee voting law (Act No. 61 of 1921, Ex. Sess.) will not be counted when the voter got the ballot from the printer, and not from the clerk of court.

**12. Elections ⬤⟹154(10)—Presumed that voter whose ballot must be rejected cast one of the perfect ballots.**

The presumption is that one whose vote must be rejected because not cast in compliance with the absentee voting law cast one of the properly marked ballots, and not one of those rejected for other reasons.

**13. Elections ⬤⟹154(9)—Party committee not proper party to primary contest.**

Under the primary election law, contest of primary election is properly brought against the apparently successful candidate, and executive committee of the party calling the election is not a necessary or proper party.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Jerry Cline, Judge.

Suit by Remi Vidrine against Ernest L. Eldred. From a judgment for defendant, plaintiff appeals. Affirmed.

Thos. Arthur Edwards, of Lake Charles, and Mark C. Pickrel, of Oakdale, for appellant.

Hawthorn & Stafford, of Alexandria, and Percy C. Smith, of Oberlin, for appellee.

ST. PAUL, J. This is a contested election case arising under the primary election law, under which this court is required to decide the case within 24 hours after submission. Thus handicapped, this court can perform the heavy duty imposed upon it only by efforts well-nigh superhuman. Hitherto this court has not failed; but it will hardly be thought amiss if we suggest to thinking men that when some case of greater magnitude than this reaches this court, or many cases reach us at once (and the tendency to contest elections grows greater as time passes), the task may eventually prove not only *almost*, but *altogether*, beyond the capacity of mere human beings. Even as it is, this court can dispose of such cases only in the light in which they strike us at the time, conscious, however, of our good faith, though well aware that decisions thus hastily rendered must sometimes prove erroneous in fact or in principle. But we can do no more than our best.

### I.

[1, 2] Plaintiff claims that the primary election for the Democratic nominee for mayor of Oakdale was a nullity, and, in the alternative, that he would be the nominee had the votes been properly counted.

As he claims the nomination, he shows a right of action; and, since it may happen that the court may find that he has not received the majority of the votes, and may yet find that the election is a nullity and so declare it, it follows that he may in the alternative pray to have the election annulled. And we cannot see that it makes any difference that he changes the order, though not the substance, of his alternative demands. Andrews v. Blackman, 131 La. 359, 59 South. 769.

### II.

The alleged grounds for claiming that the election was a nullity are: (1) That the

election was not sufficiently advertised; (2) that the returns were not properly certified by the commissioners of election; and (3) that the ballot used was not printed and issued according to law and the form required by law.

[3] 1. To the first ground it suffices to say that nearly 500 voters took part in the election out of some 700 registered in a population of about 5,000.

[4] 2. To the second ground of objection we answer in the words of Justice Monroe in Andrews v. Blackman, 131 La. 355, 59 South. 769, thus stated in the syllabus, and more elaborately in the body of the opinion, viz.:

"Irregularities in the conduct of a primary election, such as the failure of election officers to sign or forward a particular document in a particular manner, or failure to provide * * * a booth of particular dimensions, particularly situated, or constructed of particular material, but not preventing a free and honest expression of the will of the voters, will not affect the validity of a nomination at the election."

This is in accord with the general rule supported by abundant authorities cited in the text that, where the electors have had a fair and free opportunity to express their will at the polls, and have done so, the result of their choice will not be set aside because of the failure of some ministerial officer to perform some duty imposed upon him by law, or in the manner prescribed for his guidance.

[5] 3. The ballots used in the election were not issued by the municipal authorities as required by the primary election law, and did not contain detachable numbered slips as required by that law. This was in violation of the primary law, Act 97 of 1922, p. 178 in fine.

In Hart v. Picou, 147 La. 1017, 86 South. 479, it was held (syllabus):

"The provision of [the primary law] requiring numbered detachable slips to form a part of ballots is mandatory, and the failure to observe it, even by a local printer who prints the ballots on failure of the secretary of state to deliver them, invalidates the election. * * *"

And it was further held that one who had no knowledge until the day of election that the ballots were not numbered, and was not responsible for the issuing of such ballots, would not be estopped from contesting the validity of such election because he participated therein as a candidate.

In the case before us plaintiff was mayor of the municipality which by law was required to furnish the ballots for the election. It was therefore his duty to see that proper ballots were printed and issued, and we are of opinion that he was thus estopped from questioning the validity of the ballots, which he himself should have furnished. He cannot profit by his own failure or neglect, even though it is admitted that this occurred merely because of his misunderstanding that it was his duty to furnish such ballots.

We are therefore of opinion that the election should not be annulled in this instance.

### III.

The returns of the commissioners showed 486 votes cast at the election, of which plaintiff received 241 votes and defendant 242, thus giving defendant a majority of one vote over plaintiff. Three votes were spoiled.

On a recount in open court 453 ballots were found to be unobjectionable, of which plaintiff received 225 votes and defendant 228, thus giving defendant a majority of three votes over plaintiff.

[6] Thirty-three votes were objected to by either plaintiff or defendant. Of these there were 31 which this court has carefully examined, and which we unanimously agree should be rejected as void ballots or ballots having such distinguishing marks upon them as might have been placed thereon by the voter for the purpose of identification.

Some of these votes were signed by the voter. Some of them contained other marks

than the cross mark in the square opposite the names of candidates, as, for instance, the names of candidates written, or additional cross marks or checks or lines outside of the square. Some contained visible erasures.

All these votes we reject as containing marks capable of serving as identification marks, though perhaps not so intended by the voter. These are marked ballots and should have been rejected.

[7] Other ballots were voted by scratching out the names of candidates not voted for, leaving the names of those intended to be voted for. On others check marks were used, or stars, or by writing "yes" after the name of a candidate instead of a cross mark, or again by making the cross mark with ink instead of pencil, or by putting the cross mark outside the square.

All these we rejected as being improperly marked. The law requires that a vote shall be cast by marking with a black lead pencil a cross mark in the square opposite and to the right of the candidate intended to be voted for. No ballot otherwise marked is properly marked, and no ballot should be counted which is not marked just so.

[8] We do not mean, however, that the cross mark must be perfect in form. It may resemble an X in print or in script; that will suffice; but it must be a bona fide effort to make a cross mark with black lead pencil in the square opposite and to the right of the candidate's name. Any other way of marking a ballot is not allowed and spoils the ballot; and any additional mark whatsoever upon the ballot, when made by the voter, spoils the ballot as being capable of identification.

[9, 10] Of the 33 ballots objected to we count ballot No. 109 for defendant. That ballot is perfect except for a trifling scratch in ink evidently not made by the voter, but by some one handling the ballot in the count or recount. And we count ballot No. 102 for the plaintiff. This ballot is perfect except that in voting for councilmen the voter voted for six councilmen instead of five. This vote was of course spoiled for councilmen, since the choice could not be determined.

But the primary law specially provides (page 195, § 26) that voting for less than the required number of candidates shall not spoil a ballot in toto; hence such voting for less cannot be taken as a mark of identification; and by the same token neither can a voting for more. Hence both must be looked upon as a mere mistake by the voter, and not a mark of identification.

These two votes, one for plaintiff and one for defendant, do not change the relative standing of the candidates.

IV.

Wallace Eldred, Ton Hewit, A. S. Binge, and Mrs. Lahaye, though allowed to vote, were disqualified by nonresidence. Two of them voted for defendant and two for plaintiff. Their votes should be deducted from the candidates for whom they voted. But, whether we deduct them or let them stand (two for each), it would make no difference in the relative standing of the two candidates.

[11, 12] Mark Finkelstein voted under the absentee voting law. Act 61 of 1921 (Extra Session). But he got his ballot from the printer, and not from the clerk of court. So this ballot cannot be counted. He voted for plaintiff, and, since the presumption is that he cast a properly marked ballot (as every ballot cast is presumed to be valid until the contrary be shown), it follows that it cannot be among the ballots above rejected. This vote must therefore be deducted from the total vote for plaintiff, thus changing the relative vote for the two candidates, so that defendant now has a majority of four votes over plaintiff and is clearly entitled to be declared Democratic nominee for mayor of Oakdale.

[13] Here it may be said that plaintiff com-

plains of a ruling of the trial judge holding that the Democratic executive committee, which called the election, was not a necessary or proper party defendant to this suit and maintaining their exception of misjoinder filed to plaintiff's suit. The disposition made of this exception is not material to the case; but we think it was properly sustained. Under the primary law the contestant must bring his action against the contestee (page 197, § 27), and the contestee is the apparently successful candidate (page 201, § 31). There is nothing in the law which requires that the committee be made a party to the suit, and, since the committee has no interest in the result, there is no reason why it should be.

### Decree.

The judgment appealed from is therefore affirmed.