Plaintiff and defendant were candidates for clerk of court of the parish of Lincoln in the second Democratic primary election held on February 23, 1932. The Democratic Executive Committee of the parish tabulated the returns and found that plaintiff had received 1,588 votes, and that defendant had received 1,590 votes. Defendant was accordingly declared the party nominee, and plaintiff instituted this suit to contest the nomination.
Plaintiff alleges in his petition that twenty-six illegal votes were cast in the election at various voting precincts, of which 22 were cast for defendant and four for plaintiff. Defendant in his answer denies that any illegal votes were cast for him. He specifically denies plaintiff's right to attack fourteen of the alleged votes, because the votes were not challenged when they were cast at the polls. In the alternative, defendant alleges that twenty-five votes were illegally cast for plaintiff. The names of the voters and the reasons why their votes are claimed to be illegal are detailed in the pleadings.
On the trial of the case, the legality of 42 votes was actually put at issue. The judge of the district court found that 20 of these votes were cast for defendant, and that 22 were cast for plaintiff. He deducted 20 votes from the 1,590 votes received by defendant, leaving him a total vote of 1,570; and he deducted 22 votes from the 1,588 votes received by plaintiff, leaving him a total vote of 1,566. *Page 705 
Defendant thus having a majority of 4 votes, giving him the nomination, judgment was accordingly rendered rejecting plaintiff's demand, and plaintiff appealed.
For convenience, the judge of the district court divided the 42 disputed votes into four classes, and we shall adopt his classification in passing upon their legality.
Class 1 embraces 14 votes. The voters in this class did not go to the polls and vote. One or more of the commissioners of election carried a ballot to each of them, and the voter, at home, marked, or caused to be marked, the ballot, and delivered it to the commissioner, who returned it to the polling place and deposited it in the ballot box.
These voters are the ones referred to in defendant's answer as being unassailable because plaintiff had failed to challenge them when their votes were deposited in the ballot boxes, and, for the same reason, defendant objected to any evidence being received as to the manner of their voting or as to the candidates for whom they voted. The evidence was admitted subject to the objection, because, as stated by the trial judge, the question presented was a serious one which had never been passed upon by this court, and he thought that the court should be in full possession of the facts in considering it.
We think the objection was good, and should have been sustained. The Primary Election Law allows the candidates watchers at the polls, and allows the watchers to challenge any voter for any cause. Act No. 97 of 1922, § 25, pp. 191 and 192. And the law also requires that every protested ballot shall have attached to it a memorandum setting forth the name of the voter, the name of the *Page 706 
challenger, and the ground of protest. Section 20, p. 188.
The purpose of the provision is plainly to permit identification of the ballot, and to prevent an election held according to law being annulled by a subsequent inquiry into the manner in which the electors voted, an inquiry necessarily depending upon the testimony of the voters themselves without any opportunity being afforded for successful contradiction. And it is the only method provided by the statute for contesting the legality of the ballots.
The trial judge found that 11 of these ballots were cast for defendant, and that three of them were cast for plaintiff. He also found that the votes were illegally cast, and rejected them. Defendant, therefore, suffered a net loss of eight votes in the tabulation made by the trial judge under his ruling. In our opinion, these 14 votes should be counted and respectively allotted to the candidates for whom they were cast.
Class 2 embraces 3 votes that were cast by as many electors who appeared at the voting place in their cars, but remained in their cars, their ballots being brought out to them, and then returned and deposited in the ballot box by one or more of the election commissioners. These 3 votes were cast for plaintiff. They were properly rejected by the trial judge.
The statute requires that every person desiring to vote shall appear at the polling place, and there obtain a ballot from the commissioners, retire to a voting booth, or place prepared for the preparation of his ballot, mark his ballot, or cause it to be marked in the cases allowing the voter to ask for assistance, *Page 707 
and immediately deposit the ballot in the ballot box, and then retire without the barrier. Act No. 97 of 1922, § 26, p. 195. This provision is mandatory, and any vote cast in violation thereof is invalid.
Class 3 embraces 23 voters, 20 of whom became 21 years of age in 1931, and 3 of whom became 21 years of age in 1930. None of these voters paid their 1931 poll taxes during the year 1931. All of them, however, paid their 1931 poll taxes, and two of them additionally paid their 1930 poll taxes in 1932. Eight of these voters paid their poll taxes to the election officials before voting on the day of the election. The trial judge rejected these votes, 15 of which were cast for plaintiff and 8 of which were cast for defendant.
Defendant contends that all these voters, in order to be qualified to vote at the election, must have paid their 1931 poll taxes on or before December 31, 1931, and that those owing poll taxes for 1930 must have paid them on or before December 31, 1930. Per contra, plaintiff contends that, under the exception contained in section 2 of article 8 of the Constitution of 1921 for the benefit of voters under 23 years of age, all these voters were authorized to pay their 1930 and 1931 poll taxes on any date in 1932 up to and including the election day and vote.
The pertinent portions of section 2 of article 8 of the Constitution of 1921 reads as follows, viz.:
"No person less than sixty years of age shall be permitted to vote at any election in the State who shall not, in addition to the qualifications above prescribed, have paid on or before the 31st day of December, of each year, for two years next preceding the year in *Page 708 
which he offers to vote, a poll tax of one dollar per annum. * * *"
The exception to this provision reads as follows, viz.:
"The provisions of this article as to the payment of poll taxes shall not apply to persons who are deaf and dumb, or blind, nor to persons under twenty-three years of age, who have paid all poll taxes imposed upon them by this article," etc.
The exception, in our opinion, applies to the number of poll taxes required of an elector under the first-quoted provision, and not to the time the poll tax must be paid. Under the exception, a person reaching his majority in 1930 could vote in any election held in that year subsequent to his birth date, without the payment of the 1930 poll tax, because he has until the last day of the year to pay it. On paying his 1930 poll tax on or before December 31, 1930, the voter was entitled to vote at any election held in 1931, upon his producing proof of payment only of his 1930 poll tax, because he had until the last day of 1931 to pay his poll tax for that year. To vote in any election held in 1932, an elector must have paid his 1930 poll tax on or before December 31, 1930, and his 1931 poll tax on or before December 31, 1931.
As illustrative of the fallacy of plaintiff's contention, the trial judge aptly refers to the case of James R. Kolb, who was one of the 23 voters whose ballots were rejected. Mr. Kolb became 21 years of age on August 23, 1930. On February 23, 1932, the day of the election, he paid his poll tax for the year 1930, and for the year 1931, and was permitted to vote. He will be 23 years old on August 23, 1932. He therefore cannot legally vote in the *Page 709 
congressional elections to be held in the fall because he will then be over 23 years of age, and did not pay his 1930 poll tax on or before December 31, 1930, and his 1931 poll tax on or before December 31, 1931. Nevertheless, plaintiff's interpretation of section 2 of article 8 of the Constitution would make his vote legal on February 23, 1932, and illegal in November, 1932, as well as in 1933. We do not think the framers of the Constitution intended to create such an anomalous situation.
Under the Constitution the moment a person reaches the age of 21 he owes a poll tax. Doughty v. Allen, 170 La. 556,128 So. 514. And the meaning of the constitutional provisions, taken as a whole, in our opinion, is that a poll tax of a dollar a year is imposed on every resident of the state between the ages of 21 and 60, and that, in order to vote in any year, a person must have paid his poll taxes for the next two preceding years on or before December 31st of each of said years. But because a person under 23 years of age may owe two poll taxes, or he may owe only one, or he may owe none at all at the time he offers to vote, an exception is made as to him, and he may vote, provided he has timely paid all the poll taxes imposed upon him by law, whether two, one, or none at all.
Class No. 4 embraces two votes. One of the electors voted for plaintiff and the other voted for defendant. Both votes were rejected by the trial judge as being illegal. As one offsets the other, and as the legality vel non of the votes can have no effect on the ultimate result of the election, we deem it unnecessary to discuss them.
When plaintiff was about to close his case in chief, on the third day of the trial, *Page 710 
he offered to file a plea of estoppel and an alternative motion to amend his petition, wherein he attacked the votes of 19 voters under 23 years of age who paid their poll taxes after January 1, 1932, and who he alleged had voted for his opponent. On objection by defendant, both pleas were disallowed. We see no error in the ruling.
The plea of estoppel was based on an alleged ruling by the Attorney General secured by the sheriff of the parish that voters referred to in class 3 were entitled to pay their poll taxes before the election and vote. But we do not see anything in this which estops defendant to contest the legality of such votes. Cf. Hart v. Picou, 147 La. 1017, 86 So. 479.
Laws governing elections are sui generis. Section 27 of Act No. 97 of 1922, relating to election contests, provides that the contestant shall set forth specifically and in detail the grounds on which his contest is based, and the irregularities or frauds of which he complains. The contestee is required to answer the petition within five days after service, and on the fifth day, whether the contestee has answered or not, the court must proceed without further delay and in a summary manner to try the issue presented. Provision is made for taking testimony out of court before trial and even before filing suit; a decision is required within twenty-four hours after the case is submitted; the appeal, if any be taken, is returnable in five days; the appeal must be heard by preference on the original record, and must be decided within twenty-four hours, and no application for a rehearing is permitted. If the appellate court is in vacation, it must be convened in special session to hear and dispose of the *Page 711 
case. The statutory provision also declares that "no contest shall be entertained unless brought within two days after the official promulgation of the result of the election."
It would thus appear that the purpose of the legislative act is to secure a final decision of the contest in the shortest possible time and in the most summary manner. The intention of the lawmaker apparently was that the contestant should set forth at one time and at the outset all the facts on which he bases his contest. And in any event, a contestant ought not be permitted to amend his petition setting up new grounds of action after the two days allowed by the statute for filing the suit have elapsed, because defendant would then be entitled to service and additional delay for answering, and could, in turn, set up new defenses, thereby defeating the purpose of the law and destroying the summary character of the proceeding.
Plaintiff's proposed amendment was not an enlargement or amplification of his original petition, but was an entirely new ground of contest which, we think, plaintiff was too late in urging.
In summing up, we find that 9 votes, instead of 20 votes, must be deducted from the 1,590 votes cast for defendant, leaving him a total of 1,581 votes, and that 19 votes, instead of 22 votes, must be deducted from the 1,588 votes cast for plaintiff, leaving him a total of 1,569 votes, or a majority in favor of defendant of 12 votes, thus giving him the nomination.
For the reasons assigned, the judgment appealed from is affirmed. *Page 712 
OVERTON and LAND, JJ., concur in the opinion and decree, except as to the ruling that protest is necessary at time ballot is cast. This ruling will endanger purity of elections, and is contrary to what this court has done in the past. Vidrine v. Eldred, 153 La. 779, 96 So. 566; Perez v. Cognevich, 156 La. 331, 100 So. 444.
ST. PAUL, J., concurs in the decree on the ground that none of the ballots herein complained of were protested when cast, and hence they cannot now be challenged.