Milton J. Burg and Louis H. Folse were rival candidates for the democratic nomination for the office of Senator from the Ninth Senatorial District, which comprises the parishes of St. Bernard and Plaquemines, at the primary election which was held on January 18th 1944. The returns of this election, which were delivered to the Ninth Senatorial District Democratic Executive Committee by the election commissioners, revealed that Folse received 1883 votes in the Parish of Plaquemines to 502 votes for Burg and that, in the Parish of St. Bernard, Folse received 1075 votes and Burg 1785 votes. Thus, it appearing that Folse had received a total of 2958 votes against 2287 votes for Burg in the entire district, or a majority of 671 votes, the Senatorial Committee certified Folse as the nominee of the democratic party in the forthcoming general election.
Within 48 hours from the date upon which the Ninth Senatorial District Democratic Executive Committee promulgated the returns of the election, Burg filed the present contest in the District Court of St. Bernard Parish against Folse and said Committee alleging that numerous frauds and irregularities had occurred in the conduct of the election in the Parish of Plaquemines; that these frauds and irregularities were of such a serious nature that, as a result thereof, the electors of that parish were prevented from expressing their choice for Senator and that, therefore, the Ninth Senatorial District Democratic Executive Committee should be ordered "to exclude from the tabulation and compilation of its canvass of the votes cast at the Primary Election held on January 18th, 1944, for Senator from theNinth Senatorial District of Louisiana, and to certify the name of Milton J. Burg as the candidate of said Democratic Party for said office at the General Election to be held on April 18th 1944 * * *."
To this petition, defendants filed exceptions (1) of misjoinder of parties defendant *Page 33 
(2) of vagueness, (3) of no right or cause of action and (4) to the jurisdiction of the Court ratione materiae, together with an answer in which they denied all of plaintiff's allegations respecting the alleged fraud and irregularities in the conduct of the election held in Plaquemines Parish.
On the day of the hearing, the trial judge sustained the exception of misjoinder of parties defendant and dismissed plaintiff's suit. Later, on appeal from that judgment, this court reversed the decision and remanded the case for further proceedings. See State ex rel. Milton J. Burg v. Louis H. Folse et al., La.App., 16 So.2d 613. Upon the remand of the matter, the trial judge sustained the exceptions of vagueness and of no right or cause of action and again dismissed plaintiff's suit. Plaintiff has prosecuted the present appeal from that judgment.
In his petition, plaintiff alleges, in substance, as follows: That the primary election for the democratic nomination for Senator of the Ninth Senatorial District was lawfully ordered and held on January 18, 1944, and that he and his opponent were lawfully qualified candidates for said office; that the returns of the election show that he received 1785 votes in the Parish of St. Bernard and 502 votes in the Parish of Plaquemines and that Folse received 1075 votes in the Parish of St. Bernard and 1883 votes in the Parish of Plaquemines; that the election in the Parish of Plaquemines was illegal and fraudulent for the following reasons to wit:
That the members of the Democratic Parish Executive Committee, having control of the election and being favorable to the candidacy of his opponent, entered into a conspiracy whereby the power of their offices was illegally used to obtain for his opponent an unfair advantage over him and to deprive him of his right to have adequate representation at the polls, all to the end that his defeat might be brought about through unlawful and fraudulent means; that, in pursuance of said conspiracy, said Committee held its meeting for the selection of the commissioners of election at Belle Chasse, Louisiana instead of at the courthouse at Pointe-A-La-Hache, Louisiana as required by law; that, as the result of said illegal meeting, plaintiff was able to obtain only seven election commissioners favorable to his candidacy out of a possible 75 commissioners, whose names had been submitted by himself and other local candidates friendly to him; that the members of said Committee, acting in violation of law, refused to permit the persons, whose names had been submitted as commissioners, from acting as watchers at the polls with the result that, on the day of the election, he had no adequate representation at the places of voting; that, in addition, the members of said Committee, acting in furtherance of the illegal scheme to prevent a fair election, had the polls manned with armed deputies for the purpose of threatening and intimidating all voters who were favorable to his candidacy; that, in numerous precincts of Plaquemines Parish, the commissioners of election countenanced, encouraged and permitted a large number of voters to receive assistance in voting when such voters were not legally entitled to such assistance; that, in many of the voting precincts, plaintiff's watchers and commissioners protested, with respect to the manner in which the votes were being cast, but that their protests were ignored and refused by the commissioners favoring the candidacy of his opponent; that, in several voting precincts, the ballot boxes were hidden from public view in violation of law and that, in others, the places selected for voting were not such places as are authorized by law.
Plaintiff further avers that, in view of the numerous irregularities and frauds perpetrated by the Parish Executive Committee and the commissioners of election in the interest of his opponent, the election in Plaquemines Parish was illegal and that the voters of that parish were deprived of the right of expressing their free choice for Senator of the Ninth Senatorial District; that, therefore, all of the returns compiled by the commissioners of election in Plaquemines Parish should be annulled and excluded from consideration in determining the nominee of the Democratic party and that, if this is done and the returns from St. Bernard Parish are alone considered, he is entitled to be recognized as the lawful nominee.
In plaintiff's prayer, he requests that the Ninth Senatorial District Democratic Executive Committee be ordered to exclude from consideration all of the votes cast in the district and that it be commanded to name him as the democratic nominee for Senator.
A careful examination of plaintiff's petition has been sufficient to convince us that he fails to state a cause of action. *Page 34 
In the first place, it is doubtful that the various charges of fraud and irregularities set forth in the petition are adequate to warrant the relief he seeks for the reason that he does not expressly claim that, as a consequence thereof, he was deprived of any vote that he would have otherwise obtained or that his opponent would not have secured the same number of votes shown on the returns. The jurisprudence in election contest case is well settled that the courts will not entertain such suits unless it is shown that the matters complained of would have changed the result of the election. See Landry v. Ozenne et al., 194 La. 853,195 So. 14 and cases there cited.
Furthermore, even if we assume that the charges made by plaintiff are sufficiently detailed to authorize a finding that the people of Plaquemines Parish were deprived of the expression of their choice at the polls, plaintiff's petition is defective in that he has failed to allege that, but for the frauds and irregularities which allegedly occurred, he would have received a majority of the votes cast for Senator in the Ninth Senatorial District.
Under the primary law which was in force prior to the enactment of Act No. 46 of 1940 (see section 27 of Act No. 97 of 1922, as amended by Act No. 8 of the Second Extra Session of 1934, sec. 4 and by Act No. 28 of the Second Extra Session of 1935, sec. 1), an election contest was permitted only in cases where the contestant claimed to have been nominated. Under that law, it was decided that the jurisdiction of the court to entertain election suits is limited to cases where the contestant is able to bring himself within the provisions of the statute — that is, that, in order to maintain his suit, he must allege that he actually received a majority of the legal votes cast in the election. See Treadaway v. Plaquemines Parish Democratic Committee, La.App., 193 So. 609 and cases there cited. To the same effect see also Reid v. Brunot, 153 La. 490, 96 So. 43, where it was held that a contestant, who merely alleged that he had received a sufficient number of votes to entitle him to enter a second primary, did not state a cause of action because the primary act only permitted him to contest the election where he was able to claim that he received a sufficient number of votes to entitle him to the nomination to the office.
The present primary law has enlarged the powers of the courts in election contests. Section 86 of Act No. 46 of 1940 provides in part:
"(b) Any candidate for a nomination for any office who shallclaim that but for irregularities or fraud he would have beennominated, or that he would have been entitled to enter a secondprimary, and shall desire to contest the election, shall presenta petition to the Judge of the District Court * * *." (Italics ours.)
The section continues on to declare that the petition shall set forth specifically and in detail the grounds upon which the contest is based and the irregularities and frauds of which complaint is made and further provides that the contestant may, without any allegation of irregularities or fraud, request a recount of any ballot box or boxes in which the votes were deposited.
Thus, it will be seen that the Act of 1940 is much broader in its scope than the former primary law in that it permits the recounting of ballot boxes without any allegation of fraud or irregularities; in that it permits an election contest by one who claims that he received a sufficient number of votes entitling him to enter a second primary and in that, in cases where the contestant relies on fraud and irregularities, he is required only to allege that, but for such fraud and irregularities, he would have received a majority of the votes cast in the election instead of being required to allege that he actually received a majority of the legal votes which were cast.
In the instant case, plaintiff does not allege in his petition that, but for the frauds and irregularities which occurred in Plaquemines Parish, he would have received a majority of the legal votes cast for Senator. This was an essential requirement in order to vest the court with jurisdiction of the election contest and his failure in this respect is fatal to his right of action. Election contests are sui generis and the jurisdiction of the court to entertain such suits is limited to cases where the contestant is able to bring himself within the provisions of the primary law. See Bradley v. Neill, 174 La. 702, 141 So. 382.
Counsel for plaintiff argue that, while it it true that there is no specific averment contained in the petition to the effect that, but for the alleged frauds and irregularities, he would have received a majority of the votes cast in the Senatorial District, a consideration of the pleading on the whole evidences an intention on plaintiff's part to make such a claim. But even if we assume *Page 35 
that this contention is correct by the adoption of a most liberal view of the claims asserted by plaintiff, we find ourselves unable to sustain the petition for another, and perhaps a stronger, reason which will be hereinafter set forth.
The only relief for which plaintiff prays is for the issuance of a writ of mandamus commanding the Ninth Senatorial District Democratic Executive Committee to exclude the returns of the votes cast in the primary and to declare him the nominee of the democratic party. His counsel explain that this prayer is obviously erroneous and that, when it is considered in connection with the other allegations of the petition, it becomes plain that the relief actually sought is the issuance of a writ of mandamus ordering the Senatorial Committee to exclude the vote in Plaquemines Parish from the compilation and tabulation of the returns and to give consideration only to the vote in St. Bernard Parish where plaintiff obtained a majority. In other words, counsel maintain that, because of the alleged frauds and irregularities committed in Plaquemines Parish, the entire vote of that parish should be eliminated and that he be nominated solely on the results obtained in St. Bernard Parish.
It is clear to us that such a prayer could not be granted as this would result in the disfranchisement of all of the legal voters in the Parish of Plaquemines and permit plaintiff's nomination on the vote cast in St. Bernard Parish. The district involved comprises both parishes and to deprive the people of one of these parishes of the right to express their choice for Senator, no matter what frauds and irregularities were committed by election officials of that Parish, would be (to put it mildly) most undemocratic.
In the recent case of Dumestre v. Fisher, 195 So. 25, 27 where the identical contention was made, we observed:
"In regard to the prayer of contestant that the election in certain designated precincts be declared void for the reasons stated in his petition, we observe that the contestant is not entitled to select certain boxes for elimination from the total count of the votes cast in the election, no matter what charges may be made concerning the conduct of the election or the election commissioners in those precincts, for the reasons given by the trial judge in his able opinion in this case.
"`To order such precincts eliminated from the tabulation if irregularities and fraud were found therein would be tantamount to the disfranchisement of every voter in said precinct ordered eliminated, and if the votes, as tabulated, were as cast by the electors, would, or might, defeat the will of the people.'"
The present primary statute, as we view it, gives a candidate the right to maintain an election contest upon allegation of frauds or irregularities — limited, however, to such cases where he is able to claim that, but for such frauds and irregularities, he would have received a majority of the legal votes cast. We are also of the opinion that, in such cases, the contestant has the right to demand, alternatively and in the event that the court finds that the frauds and irregularities were of such a grave nature so as to deprive the voters of the free expression of their will, that the court declare the primary to be null and order the holding of another contest. But an unsuccessful candidate may not, upon alleging fraud and irregularities, have the tabulation of the votes in certain election precincts or districts excluded from the total result so that, by the elimination of such precincts or districts, he will gain the desired nomination for, as we have said in Dumestre v. Fisher, to adopt this course would have the effect of depriving many of the duly qualified electors of their right of suffrage.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 36