McCALEB, Justice.
 

 In compliance with the provisions of R.S. 18:364, requiring disposition of cases of this character within 24 hours after submission, we herewith hand down our decision — the reasons for which will follow in due course.
 

 The judgment appealed from is affirmed.
 

 PONDER, J., absent.
 

 Opinion
 

 McCALEB, Justice.
 

 Following a primary election held on April 2, 1957 in the City of Eunice, St. Landry Parish, Dr. J. J. Stagg was declared the nominee of the Democratic Party for the office of Mayor of that City, the official promulgation showing that he received 2075 votes while his opponent, J. B,
 
 *737
 
 Lewis, the contestant herein, received 2043 votes.
 

 Within the time prescribed by law, Lewis instituted this suit under the provisions of R.S. 18:364 contesting Stagg’s nomination and alleging that, but for various irregularities and illegal acts occurring during the election in one of the voting polls, specifically the 10th Precinct of Ward 6 (wherein Stagg received 455 votes against 338 for Lewis), he would have been nominated over his opponent. The particular allegations, which form the predicate for the charges of irregularity and fraud, are contained in Article 7 of the petition. They read:
 

 “(a) Persons not qualified to vote at said precinct were permitted to cast their vote, said persons being listed on Exhibit A attached hereto and made a part hereof as fully as if reproduced herein in extenso.
 

 “(b) Persons not qualified to vote at said primary election were permitted to cast their vote, said persons being listed on Exhibit B attached hereto and made a part hereof as fully as if reproduced herein in extenso.
 

 “(c) An employee of the City of Eunice Police Department, Madella Hurst, in his police uniform, was in constant attendance at the door of said poll, actively electioneering, intimidating voters, and preventing said voters from exercising the free and honest expression of their respective wills, and more particularly that he laid his hands on voters and drove them towards the poll door, snatching out of the hands of contestants supporters the card bearing his name and voting number and shoving in their stead the card bearing the name and voting number of contestee.
 

 “(d) Many persons milled around immediately outside the door of said poll in a loud and tumultous manner and, upon the arrival of prospective voters at the poll, said persons swarmed around the voters’ cars and reached inside said cars grabbing at said voters and forcing upon said voters columns of sample ballots, candidates cards, and number cards, all of which deprived said voters of the free and honest exercise of their right to vote.
 

 “(e) An armed policeman, an employee of the City of Eunice, was in attendance immediately adjacent to the front door of said poll, ignoring his duty to the voters presenting themselves to protect them from intimidation and harassment and, in connection with the policeman named in ‘c’ above and other police officers of the City of Eunice presented a show of force inconsistent with the voters’ right and privilege to exercise their free will.
 

 “(f) Wrapped packages resemblng pint bottles were transported by a police automobile of the City of Eunice occupied by two and three armed policemen and said packages were delivered
 
 *739
 
 by said policemen to contestee’s supporters ‘working’ said poll, said packages believed to contain bottles of whiskey or other intoxicating liquor, and said liquor believed to be used to influence or bribe the voters at said poll.
 

 “(g) Many persons drank whiskey and liquor around said polling place and within five feet of said poll.
 

 “(h) At 6:00 a.m. on the date of said primary, the commissioners and other poll officials entered said poll and remained locked therein until 7:00 a.m. when the poll was finally opened and voting begun, all of which acted to discourage the early voters who presented themselves to cast their votes, many of whom left the poll without voting.
 

 “(i) After the said poll closed at 8:00 p.m., the door thereto was locked, excluding the public, and remained locked for a considerable time and the reading of the machines was not in public view; the door was once opened by one of the election officials who ran to an automobile nearby and talked to the occupants thereof, said door being immediately locked again after this official had passed through, in contravention of the election laws of this State.
 

 “(j) The voting machines at said precinct were not exposed to public view as required by law.”
 

 Joined as defendants in the suit are the Democratic Executive Committee of the City of Eunice and the contestee, Dr. J. J. Stagg. The relief prayed for by plaintiff is (1) that the poll in Precinct 10 of Ward 6 be declared null and void and that the votes cast therein be deducted from the total votes received by the contestant and contestee respectively; (2) in the alternative, that the entire primary election be annulled and (3) further in the alternative, that a recount of the votes cast in Precinct 10 of Ward 6 be ordered.
 

 The defendants filed, among other pleadings, an exception of no right or cause of action to the petition. This exception was sustained and plaintiff’s suit dismissed. He has appealed.
 

 Initially, we direct our attention to the relief prayed for by plaintiff. The alternative prayer for a recount of the votes in Precinct 10 of Ward 6 could not be granted for the reason that voting machines were used in the election and, obviously it is impossible to have a recount of the votes recorded on a voting machine. R.S. 18:1193 establishes the method in which votes cast on a voting machine shall be transcribed, providing that it shall be done by the parish custodian in the presence of the candidates or other representatives and that the total so transcribed shall become legal evidence of the number of votes cast for each candidate in such election “ * * * and accepted as such in any
 
 *741
 
 contest suit which may arise”. Of course, any candidate has the right to complain that the total shown on the machine does not tally with the poll list kept by the Commissioners but, once the votes are registered by the machine, it is not feasible to have such votes recounted. It therefore follows that the special provision of R.S. 18:364, which authorizes a recount of ballot boxes on allegations, made on information and belief, that the result of the election would be changed thereby, is not applicable when voting machines are used.
 

 Counsel for plaintiff suggests that-this result renders the voting machine law (R.S. 18:1161-1196) violative of Section 12 of Article 8 of the Constitution which requires the Legislature to provide by law for the trial and determination of contested elections.
 

 We find no merit in this contention. The voting machine law was enacted to insure honest elections and does not in any way alter or curtail the right of a candidate for office to contest an election when he meets the requirements of R.S. 18:364.
 

 Nor is plaintiff legally entitled to • have the poll in Precinct 10 of Ward 6 declared null and void and the votes cast therein deducted from the total votes received by the contestant and contestee, for which he primarily prays in his petition. No matter how serious the charges may be, the elimination of all the votes cast in only a particular polling place would be tanta-. mount to the disfranchisement.' of every legal voter of the precinct and this might well defeat the will of the people. Such a result is not to be countenanced. See Dumestre v. Fisher, La.App., 195 So. 25; State ex rel. Burg v. Folse, La.App., 17 So.2d 32.
 

 On the other hand, whereas the Primary Law (R.S. 18:364) gives a candidate the right to maintain an election contest upon allegations of specific fraud and irregularities if he is able to show that, but for such fraud and irregularities, he would have received a majority of the legal votes cast, see Bradley v. Neill, 174 La. 702, 141 So. 382 and Landry v. Ozenne, 194 La. 853, 195 So. 14, it has been recognized as an alternative proposition that, in the event the court finds that the frauds and irregularities alleged and proven are of such grave nature so as to deprive the voters of the free expression of their will, it will annul the Primary and order the holding of another election. See State ex rel. Burg v. Folse, supra; Vidrine v. Eldred, 153 La. 779, 96 So. 566 and compare O’Keefe v. Burke, 226 La. 1039, 78 So.2d 165. Accordingly, if the petition ,in this case discloses that the alleged fraud and irregularities were so gross as to make it evident that the electors did not have an opportunity to freely express their will, plaintiff would-state a cause of action for annulment of the entire election even though he might not be. able to prove that he would have been nomi-^
 
 *743
 
 nated but for such frauds and irregularities. Let us, therefore, scrutinize the specific charges made by plaintiff in his petition, which are set out above.
 

 In paragraph 7(a) of the petition it is charged that some 228 persons (who are named) were permitted to vote at Precinct 10 although they were not residents of that precinct and not qualified to vote therein, And it is further alleged, in connection with this and other specific charges, that plaintiff had no commissioners at said poll who could protect him from the above practices, or protest same.
 

 While the voting of such a large number of persons, who were allegedly not entitled to vote at that particular precinct, constitutes a substantial irregularity, it is not sufficient to warrant the annulment of the entire election, particularly in the absence of allegations that plaintiff was unable to follow the procedure provided by law or otherwise made any protest anent the illegal voting. Plaintiff had the remedy of purging the registration rolls and, further, any one of his watchers or any qualified voter (he alleges that he had no commissioners at the poll) could have called the attention of the commissioners to this infraction of the law. See R.S. 18:341. Since plaintiff fails to allege that he challenged these voters, he has no cause for complaint. Landry v. Ozenne, supra, and Treadaway v. Plaquemines Parish Democratic Committee, La.App., 193 So. 609.
 

 The same is true with respect to the allegations of paragraph 7(b), that 14 persons named in the petition were permitted to vote at the precinct although they were not residents of the City of Eunice. Even if all these persons voted for his opponent (which is not alleged), the result of the election would not have been changed.
 

 The charge in paragraph 7(c) that a policeman of the City of Eunice electioneered and intimidated voters by manhandling them, snatching out of their hands cards bearing plaintiff’s name and shoving into their hands a card bearing the name of the contestee, states no cause of action. Here, again, plaintiff fails to allege that any of his supporters protested against the illegal electioneering on the part of the officer or that his conduct influenced any voter to change his vote or that it caused any person to refrain from voting. It is not charged that these infractions of the law occurred inside of the poll or that any of the voters were molested by the city officer after they had entered the poll or even that the election commissioners had knowledge of the acts of the officer.
 

 The foregoing averments respecting the conduct of the election at the 10th precinct of the 6th ward seem to be the main ones and those specified in paragraphs (d), (e), (f) and (g), which are all kindred to the charge of improper electioneering at or near the polling place, do not show any substantial basis for a holding either
 
 *745
 
 that plaintiff was illegally deprived of a vote that he would have otherwise obtained or that Stagg obtained an illegal vote as the result thereof or that any voter was deprived of the right of suffrage.
 

 The charge contained in paragraph 7 (h) that the poll did not open until 7:00 a.m., or one hour later than it should have opened, and that this discouraged early voters, many of whom left without voting, also shows no ground for complaint since there is no allegation as to how many voters left the poll or that they failed to return and cast their vote for plaintiff. See Landry v. Ozenne, supra.
 

 It is set forth in Paragraphs 7(i) and (j) that the voting machines at the precinct were not exposed to public view as required by law; that, after the polls closed, the doors were locked for a considerable time and that the reading of the totals on the machines was not made in public. Since it is not alleged that any voter was deprived of casting his vote or that the voting machines were tampered with after the polls were closed, or that plaintiff was deprived of a single vote as the result of any irregularity complained of, it is difficult to see that these paragraphs state a cause of action.
 

 Viewing the petition as a whole, the best that can be said is that plaintiff makes charges of various irregularities and specifies unlawful conduct on the part of a police officer which he evidently failed to protest. The combined infractions set forth fall far short of exhibiting such a condition of irregular or illicit practices as would warrant a conclusion that, even if they were proven, the election should be annulled. For this Court to render such a drastic order, there must be a clear showing that a course of fraudulent conduct was employed which effectually prevented the electors from expressing their will.
 

 In Landry v. Ozenne, supra, where the charges of irregularity and fraud were more numerous and detailed than those contained in the instant petition, this court, in affirming a judgment which dismissed plaintiff’s suit on an exception of no cause of action aptly remarked [194 La. 853, 195 So. 23]:
 

 “There is nothing in plaintiff’s allegations that any defeated candidate could not set up after his defeat and thereby throw an election into the courts. If this were permitted it is easy to see that in every case in which a candidate was defeated by a small margin of the votes, two elections would inevitably be held — one at the polls and the other in the courts. Before a candidate in a primary election can be heard in the courts to attack the returns of the election, he must show by the clearness and particularity of the allegations of his petition that he has been deprived of the nomination by the fraudulent
 
 *747
 
 or wrongful acts of the election officials. To hold otherwise, would do violence not only to the provisions of the primary election law itself, hut also to the interests of the voters, who have even a more vital stake in the result of an election than the candidates themselves.”
 

 For convenience, we repeat herein the decree which was handed down by us in this matter on April 18, 1957.
 

 The judgment appealed from is affirmed.
 

 PONDER, J., absent.