PER CURIAM.
A primary election was held for the municipality of Tullos on April 7, 1962. The two candidates for mayor were Charles. Henry Timberlake and Sam Lindsey. Following the election, the Democratic Executive Committee of Tullos tabulated the returns, which showed that Lindsey had received 167 votes and Timberlake 164, and *407 by resolution declared Lindsey to be the Democratic nominee for mayor as having received a majority of the votes cast for that office.
Timberlake, the contestant, thereupon filed this suit seeking to annul the Democratic primary election for mayor on the ground of certain alleged irregularities in the conduct of the election. Alternatively, he prays to be declared the nominee instead of Lindsey on the ground that six unqualified electors voted for his opponent in the election. Made defendants were Lindsey, the contestee, and the municipal Democratic Committee. Trial of the matter resulted in dismissal of the contestant’s suit by the lower court.
The contestant appeals. (The defendants also answer the appeal, re-urging their exception of no cause of action which had been overruled by the trial court; but it is unnecessary to discuss this contention in view of the conclusion we have reached on the merits of the suit.)
The contestant, through his able counsel, argues that no valid election was held because of certain irregularities, .relying on jurisprudence to the effect that an election will be set aside and a new election will be ordered where frauds and irregularities are proven of such a grave nature as to have deprived the voters of the free expression of their will. See Lewis v. Democratic Executive Committee of Eunice, 232 La. 732, 95 So.2d 292, and cases therein cited; Hart v. Picou, 147 La. 1017, 86 So. 479, which concerned an election set aside because the balloting was not done by the type of paper ballot then mandatorily required by statute to be used. See also: Isgitt v. Jackson, La.App. 2 Cir., 85 So.2d 290. The jurisprudence also provides, however, that “in the absence of specific facts giving rise to fraud or which cast uncertainty on the result, irregularities in an election will not affect the validity of a nomination or serve to nullify the result * * * (citations omitted.);” Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, 762.
In seeking to set aside the election on the ground of grave irregularities, the contestant in his argument to this court relies principally upon the following irregularities: (a) No poll list was furnished by the registrar of voters five days prior to the election, as mandatorily required by LSA-R.S. 18:166 and/or 18:337; and (b) The commissioners were not sworn before entering upon the performance of their duties, as mandatorily required by LSA-R.S. 18:342.
As stated by counsel: “The unrefuted facts in this case show that the poll list furnished by the registrar of voters in the April 7, 1962 Primary for the Town of Tullos did not comply with R.S. 18:166. C. H. Allen, registrar of voters, stated that the poll list which he furnished showed the names of all registered voters in Precinct 5 of Ward 2 of LaSalle Parish; that the Town of Tullos is within Precinct 5 of Ward 2 but that the boundaries of the two are not coextensive; and even further, that Precinct 5 had no fixed boundaries whatsoever.”
The poll list in question included not only the names of residents of the municipality of Tullos, but also those of residents of Precinct 5, Ward Two, who resided outside the municipal limits. A witness testified that the list contained at least one hundred voters living outside the limits of Tullos. Thus, the substance of this irregularity is actually that the poll list furnished contained a number of voters not qualified to vote in the municipal election by reason of non-residence; as appellees suggest, the contention is really that an inaccurate poll list was furnished, not that none was. No contention is made that this poll list was not furnished timely nor that contestant was not aware of its contents prior to the election. Contestant made no objection to the use of the list, however, un *408 til after the results of this primary election had been promulgated.
We find no error in the judgment of the trial court in refusing to annul the election on the basis of these irregularities. As stated in Johnson v. Sewerage District, etc., 239 La. 840, 120 So.2d 262, 271,
“It has frequently been observed by us that in the absence of fraud, corruption or proof that the irregularities complained of would have changed the result of the election, the election will not be set aside solely because of the failure of some ministerial officer to perform every formal direction prescribed by law. * * * ”
In Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403, our Supreme Court upheld the dismissal of a suit to annul an election based upon similar alleged irregularities, i. e., (a) that the list of electors furnished by the registrar to the commissioners was inadequate and contained numerous errors, and (b) that the commissioners who served at the election were not sworn as required by law. It was held that, in the absence of a showing of fraud (and it is conceded that there is none here), or that the irregularities in question deprived the voters of votes sufficient in number to have changed the result of the election, an election will not be set aside solely because of the failure of some ministerial officer to perform some duty imposed upon him or to follow every formal direction prescribed by law. That ruling and the jurisprudence upon which it is based we believe to be controlling herein, and we therefore hold that the irregularities in themselves were not sufficiently grave or prejudicial, and were not in themselves shown to have deprived the voters of a free expression of their will, so as to justify the annulment of this primary election.
The contestant further urges, however, that the inaccurate poll list was prejudicial and did affect the result of the election because six unqualified electors erroneously contained on the poll list appeared and voted for the contestee.
The trial court sustained objections by the contestee to any evidence offered by the contestant to show that the electors in question did not reside within the municipal limits of Tullos for a sufficient period of time to have been qualified to vote in the municipal election. The basis for this ruling was that the right of these voters to participate in the municipal election was not formally challenged in writing as mandatorily required by and according to procedure provided by LSA-R.S. 18:341, 352 and 1188. (These statutory sections provide that the commissioners, watchers, or any qualified voter may challenge the right of an elector to cast his vote. In the event that a voter is challenged, a written notation of the protest, signed by the challenger, shall be made and placed in the receptacle provided for this purpose in the voting machine.)
The evidence shows that the contestant was present at the municipal polling place during almost the entire time that the polls were open. He had in advance inspected the poll list and was of the opinion that certain electors shown thereon were not qualified by reason of residence or duration thereof to vote in the municipal election. He orally questioned the .right of several of the six voters to participate in the election, but he did not by written protest challenge their right to vote as mandatorily required by statute. In fact, as several witnesses testified, he orally waived his protest, after questioning the qualifications of one of the voters, by remarking, “All .right, let them vote.”
In our opinion, the District Court correctly held that the contestant’s failure to challenge the qualifications of the electors in writing and according to the procedure mandatorily required by the cited statutes, prevents him from raising the question of their disqualification by reason *409 of non-residence after he had lost the election.
As stated in Bradley v. Neill, 174 La. 702, 141 So. 382, 383:
“We think the objection was good, and should have been sustained.' The Primary Election Law allows the candidates watchers at the polls, and allows the watchers to challenge any voter for cause. * * * And the law also requires that every protested ballot shall have attached to it a memorandum setting forth the name of the voter, the name of the challenger, and the ground of protest. * * *
“The purpose of the provision is plainly to permit identification of the ballot, and to prevent an election held according to law being annulled by subsequent inquiry into the manner in which the electors voted, an inquiry necessarily depending upon the testimony of the voters themselves without any opportunity being afforded for successful contradiction. And it is the only method provided by the statute for contesting the legality of the ballots.” (Emphasis added.)
Ordinarily, voters who are disqualified to vote must be formally challenged at the time they offer to vote; under the settled jurisprudence, in the absence of a failure to challenge in writing according to the statutory procedure the voter’s qualifications to vote in the election at the time he votes, a contestant is barred after the election from attacking the validity of his vote. Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (esp. syllabus 5, at 95 So. 2d 296) ; Landry v. Ozenne, 194 La. 853, 195 So. 14; Bradley v. Neill, above-cited; Doughty v. Allen, 170 La. 556, 128 So. 514; Herrin v. Reviere, La.App. 1 Cir., 106 So. 2d 12; Dumestre v. Fisher, La.App. Orl., 195 So. 25.
In conclusion, therefore, we affirm the dismissal of the contestant’s suit to annul the election because we do not find that the irregularities proved were of such a nature that the qualified voters were deprived of a free expression of their will, and because we do not find that the contestant was prejudiced in failing to have received a majority of the legal votes cast because of such irregularities. The contestant to pay all costs.
Affirmed.