PER CURIAM.
This is an election contest involving the office of Sheriff of Lafourche Parish. Defendant herein, Eddie J. Ste. Marie was certified by the Lafourche Parish Democratic Committee as the Democratic nominee for the office involved by virtue of said defendant having received in the second primary election held January 11, 1964, a total of 10,650 votes cast for the office as against 10,429 votes received by appellant, Jessie Moore Folse, thus giving appellee herein a majority of 221 votes. Plaintiff, Folse, alleging certain irregularities in the conduct of said election filed this contest suit which was decided adversely to him by the trial court on defendant’s exception of no cause of action.
The pertinent issues involved in this litigation are well stated and have been properly disposed of in well written reasons for judgment handed down by the learned trial court, from which said reasons we approvingly quote the following:
“As I read the petitions of the plaintiff, he attacks basically two classes of voters who participated in the primary election held on January 11, 1964. In the first category are numerous voters who cast absentee ballots in Ward 10 of Lafourche Parish and in the second category are persons who he claims voted illegally with assistance in violation of R.S. 18:350. As to the absentee voters he claims that these votes are illegal for the reason that 193 of these absentee ballots were spoiled, being improperly marked and/or torn and that an additional 410 absentee ballots were void for the reason that the absentee voters were in truth and in fact present in Lafourche Parish on election day.
“To the petition of plaintiff, the con-testee, Eddie J. Ste Marie, has filed an exception no no cause of action to the original and amending petitions of plaintiff based on the several grounds enumerated in the exception.
“At the outset, I think the law is well established that election laws are sui generis and in order for a losing candidate to set aside the results of an election or to contest the results of an election, he must specifically bring himself within the strict provisions of the law governing election contest suits. Failure on the part of the plaintiff to properly allege the basis of an election contest demand under this strict construction of the controlling statutes renders the pleadings fatally defective and subject to an exception of no cause of action. Herrin vs. Ezra E. Reviere, et al. [La.App.,] 106 So.2d 12, and cases therein cited.
“The first class of voters to be considered is the absentee voters. In Love vs. Cross [La.App.,] 158 So.2d 614, and more specifically at page 618, the Court very pertinently, clearly and unmistakably covered the situation it seems to me in these words and I quote:
“ ‘The Primary Election Law allows the candidates watchers at the polls, and allows the watchers to challenge any voter for cause. * * * And the law also requires that every protested ballot shall have attached to it a memorandum setting forth the name of the voter, the name of the challenger, and the ground of the protest. * * *
“ ‘The purpose of the provision is plainly to permit identification of the ballot, and to prevent an election held according to law being annulled by subsequent inquiry into the manner in which the electors voted, an inquiry necessarily depending upon the testimony of the voters themselves without *365 any opportunity being afforded for successful contradiction.’
“And further from the same case [158 So.2d] at page 618:
“ ‘There is no allegation that any of these allegedly improperly cast absentee ballots were protested at the time the commissioners in each voting precinct, at the close of regular balloting and at the close of the polls, removed the absentee ballots from the previously sealed envelopes and counted them in accordance with law, after first checking that the absent voter is a registered elector of the precinct and that he has not been present and voted in person that day. See R.S. 18:1076. The law required that it is at this time that the absentee ballots must be challenged for cause by the election officials or watchers or any qualified voter, R.S. 18:1077, in the same manner as the ballots cast in person at the election. R.S. 18:341, 352, 1188.’ See also Bradley v. Neil [Neill], 174 La. [702] 704, 141 So. 382.
“Nowhere in plaintiff’s original and amending petition is it alleged that the qualifications of the absentee voters were contested at the polls nor that the legality of the absentee votes were challenged by the commissioners or watchers upon being voted, counted or certified. In Love vs. Cross, cited supra, 158 So.2d 614 at page 619, this language in italics:
“ ‘And it is the only method provided by the statute for contesting the legality of the ballots.’
“In the case of Lewis vs. Democratic Executive Committee [232 La. 732], 95 So.2d 292, the plaintiff claimed that 228 persons were permitted to vote at a precinct although they were not residents of that precinct and not qualified to vote. The Court, at page 292 [of 95 So.2d], stated:
“ ‘While the voting of such a large number of persons, who were allegedly not entitled to vote at that particular precinct, constitutes a substantial irregularity, it is not sufficient to warrant the annulment of the entire election, particularly in the absence of allegations that plaintiff was unable to follow the procedure provided by law or otherwise made any protest anent the illegal voting. Plaintiff had the remedy of purging the registration rolls and, further, any one of his watchers or any qualified voters could have called the attention of the commissioners to this infraction of the law. See R.S. 18:341. Since Plaintiff fails to allege that he challenged these voters, he has no cause for complaint.’
“It is my conclusion, therefore, that plaintiff’s petitions state no cause of action insofar as the challenged absentee voters are concerned for the reason that no protest or challenge was made by commissioners or watchers at the time the votes were being cast, counted, or certified.
“In passing I would like further to comment on the 410 absentee voters who are classed as illegal voters for the reason that they were present in the Parish on election day. The plaintiff has cited no law nor do I know of any law which says that the mere presence in the Parish will negative the vote of an elector who properly voted an absnetee ballot. The Attorney General for the State of Louisiana has on many occasions ruled on this point and has stated that:
“ ‘The absentee ballot is a legal and valid ballot and should be so declared by the commissioners. The mere presence of the voter in the Parish on election day would not of itself invalidate the ballot.’ Opinion of the Attorney General rendered on February 20, 1948.
*366 “The next class of voters which the petitions of plaintiff attack is the 248 persons who allegedly voted ‘illegally’ with assistance in violation of R.S. 18:-350 and which votes were cast ‘on information and belief’ for the contestee. The pleadings in this regard also fail to state that these votes or voters were challenged or protested at the time the voters offered themselves to vote. The statutory law and jurisprudence are clear that voters who receive assistance to which they are not entitled should be challenged at the time they offer to vote. Dumestre vs. Fisher, [La.App.,] 195 So. 25, Lewis vs. Democratic Executive Committee [232 La. 732,] 95 So.2d 292. See also R.S. 18:-1188, R.S. 18:580, R.S. 18:341 and R.S. 18:352.
“It is therefore my conclusion, that both classes of voters attacked by contestant in this case, that is, absentee voters and voters voting with assistance, are the type voters which must be challenged or protested prior to a challenge in an election contest suit. The failure of the plaintiff to allege such a protest or challenge at the time the votes were being cast or counted renders the petition and amending petition filed herein fatally defective, since no where in said petitions is there any language alleging such a protest or challenge.”
In addition, in his argument before this Court, able counsel for appellant has contended in substance that the provisions requiring the protest of the ballots are not applicable herein for the reason that at a second primary local candidates are without commissioners inasmuch as all commissioners in second primaries are appointed by the candidates for Governor and consequently local candidates in second primaries can not be said to have anyone present at the polls and in a position to protest the ballots at the time of counting. We believe the answer to this contention is to be found in the provisions of LSA-R.S. 18:352 which provides in full as follows:
“A ballot protested for any reason shall have attached to it by the commissioners a memorandum setting forth the ground of protest, the name of the voter, and the name of the challenger, mho may be any qualified voter. The challenged voter shall be required to sign the poll list. No person shall prevent such protest from being attached to the ballot or shall remove a protest at any time from the ballot. (Emphasis by the Court)
“Whoever violates this Section shall be punished as provided in R.S. 18:369.”
While we note that our learned Brother below cited the hereinabove quoted statutory provision without quoting same, we wish to make it clear that it is the opinion of this Court that the commissioners and watchers appointed to conduct second primaries represent all candidates and not merely those seeking the office of Governor. Moreover any of these commissioners or watchers, as well as any qualified voter, were at liberty to protest the vote. See State ex rel. Todd v. Mills, 191 La. 1, 184 So. 350.
We likewise do not find any merit in counsel’s argument that the terms of LSA-R.S. 18:1534 which prohibits loitering and electioneering at the polls preclude the right granted any qualified voter to enter a polling place for the purpose of protesting an improper or illegal ballot as provided in the hereinabove quoted Section 352.
Accordingly the judgment of the Trial Court is affirmed, appellant to pay any costs of these proceedings.
Affirmed.