FRED W. JONES, Jr., Judge.
In this appeal from a district court judgment involving an election contest, plaintiff [who lost a police jury seat by 24 votes out of 790 votes cast] contends the trial judge erred in rejecting his demand to nullify the election after it was shown that 25 illegal votes were cast.
For the reasons hereinafter explained, we affirm.
According to the evidence presented at the trial, police jury districts in West Carroll Parish generally cut across ward lines. As a consequence, those who vote at a given precinct are usually [depending upon their place of residence] eligible to vote in different police jury districts. Proper voting is supposed to be accomplished by a commissioner handing the voter a piece of paper showing his police jury district after the voter has signed the polling list. The paper designating the police jury district where the voter resides is to be handed the commissioner operating the voting machine. The latter commissioner is then to operate a lever which permits the voter to vote for the police jury candidate only in the proper district.
The record evidence further revealed that the election district for District 4 in West Carroll Parish is composed of seven precincts, including the two which are the subject of this litigation — two and three. Each precinct had two voting machines. Depending upon their residence, voters in these two precincts were eligible to vote either for the police jury candidate in District Four or in District Five.
Election commissioners from the two described precincts testified that, at the police jury runoff election held on November 19, 1983, for the District 4 position between plaintiff Scoggins and defendant Jones, the lever prohibiting District Five residents from voting in the District Four police jury election was not operated as prescribed during the first few hours because of their confusion — due to District Five not having a police jury election on that date. It was only after a voter called this to their attention around 9:00 A.M. that they thereafter properly used the described lever.
The Registrar of Voters stated that on the date in question in these two precincts 25 more people voted on the machines in the Ward 4 police jury election than signed the poll list. Fourteen of those were in Precinct 2 and eleven in Precinct 3. Out of a total of 790 votes cast in all the District 4 precincts, Jones won over Scoggins by 24 votes.
Plaintiff argues that, since the 25 illegal votes exceeded Jones’ 24 vote margin of victory, the election should be voided and a new police jury election scheduled for District 4. The trial judge ruled to the contrary and we agree with him.
In Moreau v. Tonry, 339 So.2d 3 (La.1976), it was found that 315 more votes were cast on voting machines than signatures on the precinct registers — out of a total of almost 100,000 votes cast. In addition, there were 43 forged signatures on the precinct register. Plaintiff asserted that if the number of illegal votes cast exceeded the difference between the candidates, the election should be nullified be *1205 cause its outcome could not be determined. In response, our supreme court ruled:
“... This has never been the law. If the candidate cannot prove he would have been elected ‘but for irregularities or fraud/ our jurisprudence refers to an alternative: if the court finds the proven frauds and irregularities are of such a serious nature that the voters have been deprived of the free expression of their will, the election will be nullified.
For this Court to render such a drastic order, there must be a clear showing that a course of fraudulent conduct was employed which effectually prevented the electors from expressing their will.’ Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292 (1957).
“No case has been called to our attention (and we know of none) where an election has been upset because of serious and pervasive irregularities when the evidence falls short of proving that ‘but for’ the irregularities, the one contesting the election would have won.”
This rule in election cases was later followed in Kelly v. Village of Greenwood, 363 So.2d 887 (La.1978) and Huckaby v. Hunter, 427 So.2d 1 (La.App. 2d Cir.1983). •
The evidence in this case does not indicate that any fraud was perpetrated in the police jury election that resulted in illegal votes being cast. Further, neither candidate was responsible for any irregularity that might have caused District 5 residents to be permitted to vote in the District 4 police jury election. Most significant, it was not shown nor was there any inference that any of the 25 votes above the number shown on the polling lists were cast for the defendant Jones rather than plaintiff Scog-gins.
In summary, we agree with the trial judge that plaintiff Scoggins failed to discharge his burden of proof that, but for the asserted illegal votes, he would have won the police jury election.
In view of this holding, we pretermit the necessity of considering other issues raised by defendant Jones, particularly with reference to various exceptions filed by him which were overruled and the motion filed in this court, 442 So.2d 1202.
For these reasons, we affirm the judgment of the district court dismissing plaintiff Scoggins’ suit, with costs of appeal assessed to plaintiff-appellant.
HALL, J., concurs and assigns written reasons.
MARVIN and SEXTON, JJ., dissent and assign written reasons.