HAMITER, Justice.
On April 9, 1952, at a special election, there was submitted to the qualified taxpayers of the Town of Rayne, in Acadia Parish, the question of whether that municipality should incur debt and issue revenue bonds in the principal sum of $785,-Q00 for the purpose of making improvements to its water and power systems.
During the night of the 'same date, immediately after the voting was completed and the ballots counted, the acting mayor and aldermen (the town’s governing authority) held a meeting at which they examined and canvassed the returns and, through a proclamation, announced the result of the election. The proclamation declared that the proposition was favored by a majority of 223 votes in number and of $292,555.12 in property valuation, the voting at the two polling places being as follows:
City Hall — in number, 268 for and 166 against; property valuation, $309,171.65 for and $205,-878 against.
American Legion Hall — in number, 244 for and 123 against; property valuation, $319,-710.21 for and $130,448.74 against.
Following the promulgation of the returns plaintiff, a taxpaying elector, instituted this suit to have the election declared null and void and to set aside the result thereof as determined by the governing authority. Without expressly charging fraud, he alleged numerous irregularities in the conducting of the election.
Issue was joined by defendants and the-case was tried during the court’s vacation. The trial resulted in a judgment dismissing-the suit, and from it plaintiff appealed. Because of the general public interest attending the matter the appeal was given a. special assignment for argument.
Our jurisprudence is well settled to the effect that the result of an election in which the electors have had a fair and. free opportunity to express their will, and have so expressed it, will not be set aside-merely because of the failure of election officials to perform some duties prescribed, by law or to discharge them in the exact manner designated. Andrews v. Blackman, 131 La. 355, 59 So. 769; Vidrine v. Eldred, 153 La. 779, 96 So. 566; Bradford v. Grant Parish School Board, 154 La. 242, 97 So. 430; McCann v. Mayor and Councilmen of Morgan City, 173 La. 1063, 139 So. 481.
Recognizing this general principle, plaintiff maintains that many irregularities, occurred in the conduct of this election which prevented a free and fair expression - of the will of the voters. First, he asserts, that the Commissioners of Election, contrary to law, engaged in campaigning and'.soliciting for the passage of the proposition. *561 while on duty. We have carefully studied the entire transcript and have found no evidence in support of the assertion. Not ■one of the several witnesses • offered by plaintiff in this connection testified that his vote was sought to be influenced by remarks of the officials; and it appears, moreover, that a negative vote was .cast by each of those who told how 'he voted. True, as plaintiff points out, the trial judge in a few instances sustained defense objections to questions as to what the Commissioners had said to the witnesses. But it is certain that the rulings (assuming that they were incorrect) in no manner prejudiced plaintiff’s case, for the record discloses that the excluded answers were given at other times under permitted questions; .and the remarks attributed to the officials were not of an influencing or coercive nature.
In his effort to prove the discussed •charge of campaigning and soliciting for the passage of the proposition, besides offering the mentioned witnesses who afforded him no assistance, plaintiff requested that the election commissioners be called pursuant to the provisions of LSA-R.S. 13:3662-13:3664 which authorize parties litigant to examine their opponents, agents .and representatives, as under cross-examination. The court refused the request, following a defense objection, and plaintiff now complains of the ruling, he arguing that those officials were the agents of the defendants who had ordered the election and appointed them. No error, in our opinion, was thereby committed. Although usually appointed by the governing authority, the election commissioners are not representatives of such authority in the sense contemplated by the statutory provisions invoked. Their agency relationship, if one exists, is with the entire electorate. Landry v. Ozenne, 194 La. 853, 195 So. 14. No control is exercised over them except such as is provided for in the laws prescribing their duties and responsibilities which they are sworn to perform. That they are not answerable to or controlled by the governing authority is demonstrated by the fact that under certain circumstances election officers may be appointed by already selected commissioners or even voters present at the polling place. See LSA-R.S. 39:505.
Again, plaintiff contends that “The election was conducted in polling booths which were located in rooms which were inaccessible to the public where the windows had been closed and the shades drawn, and the doors arranged so that persons could not see in, and that no one but the election officers were permitted to be inside the polling booth to see or hear what was going on, and there was no opportunity to challenge any voter or present any objection.” This contention carries the implication that the election was conducted in a manner that permitted the taking of unfair advantage of those electors opposing the proposition. But it is not borne out by the record. The evidence discloses that, except as to the front door of the *563 City Hall, there was nothing unusual about the condition or appearance of the' two rooms and their accessories, it being substantially the same as when previous elections were held in those rooms. On the glass panel of the mentioned front door, it is true, sheets of paper were pasted. The town clerk freely admitted that he so placed them when preparing for the election the preceding evening. However, he gave the reasonable explanation that he did that to prevent persons on the outside from looking through the glass into a nearby polling booth. Furthermore, according to the record, the electors were permitted unrestrained movement in and out of the rooms throughout the day; and it does not appear that any ineligible person, to whom a challenge or objection might have been directed, either voted or attempted to vote.
Next, it is said “That the voting was not conducted in accordance with law in that the voters were not permitted to vote in secrecy and did not deliver the ballots to the commissioners for depositing in the ballot box as 'required by law.” Only one person testified that he was. denied the privilege of voting secretly; and his testimony can be given little, if any, credence. He made the statement, among other detracting remarks, that he did not remember how he voted in the election which was held less than four months previously. With reference to the depositing of ballots in the ballot box the election' statute recites: “Each voter’s name shall be written on his ballot. ' The commissioners of election shall receive the ballot of each voter, check his name on the list of voters, furnished by the' registrar, enter and number his name on the list of taxpayers voting, and immediately deposit his ballot in the ballot -box, reserving to each voter the-right to so fold his ballot that it shall not be known at the time of voting whether he-voted for or against the proposition or propositions submitted.” LSA-R.S. 39:512.. We find that in the election under consideration most of the ballots were deposited by the voters themselves, contrary to the quoted statutory provision. But it is obvious that the Commissioners are directed to make the deposit only and solely because they are required to check the voter’s name on the list of electors and to record him as having voted. In no instance was it shown that the officials herein failed to fulfill this requisite.
The next complaint is “That the-counting of the votes was conducted in secret in that the polls were closed, the doors, shut and the public excluded, and the counting conducted in private with only the commissioners and those favorable to the proposition permitted to be present, and the boxes were not opened in the presence of any ‘bystanders’”. Directing-attention to-certain' evidence in the record plaintiff argues that throughout the counting of the votes the doors of the two polling places-(particularly those of the City Hall) were-locked and, hence there was a violation. *565 of Section 7, Article 8, of the Louisiana Constitution which states that “In all elections by the people * * * the ballots cast shall be publicly counted * * However,- there is also testimony of numerous witnesses to the effect that while ■the counting was being performed they entered the unlocked doors of. the' polling places, noticed that other, persons did likewise, and observed bystanders in the rooms. Thus, there is presented a question of the credibility of the witnesses. In resolving it against plaintiff the trial judge commented: “ * * * The Court is not of the ■opinion from the evidence adduced at the .trial that the ballots were counted in ■secrecy behind closed and locked doors .and in the presence of only the proponents of the issue, * * We cannot say .that he manifestly erred.
Finally, plaintiff charges that no provision was made for absentee balloting; that the ballot boxes were not sealed immediately after the counting; and that in the counting the Commissioners were assisted by persons who had no authority to participate. Assuming for the sake of argument that these alleged irregularities •occurred it is certain that they had'no effect ■whatever on the outcome of the election. The evidence shows conclusively that no ■one desired or sought to vote an absentee .ballot. The boxes, even if not sealed (there is no positive evidence that they were mot), were kept locked from the ti'me of the counting’s completion until the commencement of the canvassing a short while later. And if any fraud had been perpetrated by an outsider while assisting the Commissioners it could and would have been detected during the canvassing, because in this bond election (unlike primary elections) the taxpaying voters were required to sign their ballots.
In arriving at our conclusion that in this election there was no denial of a free and fair expression of the will of the electorate, we have not overlooked plaintiff’s argument that the failure of defendants to call' as witnesses the election commissioners creates the presumption that such agents or representatives would have testified contrary to their interests. The mentioned officials, as above pointed out, were representatives of the entire electorate, not'of the defendants alone; and plaintiff might well have offered them as his witnesses if he desired their testimony. Had they proved hostile he could have availed himself of the privilege of cross examination. There was no reason for defendants’ placing them on the stand, they not having been needed in refutation of plaintiff’s evidence.
Neither have we ignored the contention of plaintiff that the judge erred in restricting the cross examination of the City Attorney, called by' plaintiff under LSA-R.S. 13 ¡3662-13 :3664, to his activities as an official in connection with the bond issue generally, including the election. If error was thereby committed it did not prejudice plaintiff. The only -excluded testimo *567 ny sought from this witness concerned the circumstances that paper was pasted on the front door of the City Hall and that an outsider (not a Commissioner) took part in the counting of the ballots, both of which were established by other witnesses and have been considered by us.
An exception of no cause of action was filed in this court by defendants under which they urge that plaintiff’s petition is fatally defective in that it “ * * * does not allege that any specific vote or votes were changed, altered or affected because of any irregularity to the extent that the result of the election would have been changed had the irregularity not occurred.” We need not consider the exception in view of our above announced conclusion on the merits of the case.
For the reasons assigned the judgment appealed from is affirmed.