PRICE, Judge.
In compliance with the provisions of R. S. 18:364 requiring disposition of cases of this character within twenty-four (24) hours after submission, we herewith hand down our decision — the reasons for which will follow in due course.
The judgment appealed from is affirmed.
REASONS FOR JUDGMENT
This is an election contest suit brought under the provisions of LSA-R.S. 18:364(B) by James Allen, one of the candidates for democratic party nominee for mayor at the first primary held in the city of Springhill on Saturday, March 23, 1974. The defendants named are the other two candidates for nomination for the office, M. A. Gleason, Jr., and C. J. Vaughn. Also made defendants are The Democratic Executive Committee of the City of Springhill and its Chairman, James B. Branch, Jr.
*268 For a cause of action Allen alleged as follows:
“3.
“That petitioner lias been informed, believes and so believing alleges, that through some malfunction of at least one of the voting machines used at Precinct 2 in said election, the votes for the office of Mayor were not properly recorded; that the number of voters using said machines was 129 in excess of the number of votes actually recorded in the election for Mayor;
“4.
“That petitioner has been informed, believes and so believing alleges, that the malfunction consisted of a nut falling from a bolt in the interior of the machine; that the sound of the nut falling was heard by the election officials present at the time; that a voting machine mechanic who was present declared that even though the counter on the outside of said machine had ceased to function there was no need for concern for the counter on the inside of the machine would continue to function; however, when the machine was opened it was found that the inside counter had also failed properly to function, and the number of votes registered on said machine was found to be 129 fewer than the number of persons who had signed the poll books and entered said machine for the purpose of voting;
“5.
“That petitioner believes that had all of said votes been properly recorded and counted in said Precinct 2, he would have had sufficient votes to be placed in a second primary with defendant, M. A. Gleason, Jr.;
“6.
“That petitioner shows that the said first primary election for the office of Mayor should be declared null and void, and the said Democratic Executive Committee of the City of Springhill should be required to conduct another election for such office in order that all those persons desiring to cast their votes therein may have their votes properly recorded.”
Plaintiff’s petition was filed March 29, 1974 and a hearing held on April 3, 1974, five days after service on defendants as required under the statute. Defendant, M. A. Gleason, Jr., through counsel, filed an exception of improper joinder of parties and an exception of no cause or right of action. Additionally, Gleason, The Democratic Committee and its Chairman, Branch, filed answers. No appearance was made by the other defendant Vaughn. The trial court considered both exceptions valid and rendered judgment dismissing plaintiff’s action. Plaintiff appealed to this court contending the trial judge erroneously sustained the exceptions filed by Gleason.
We do not consider it necessary to discuss the correctness of the exception of improper joinder of parties leveled at the joinder of the Democratic Executive Committee and its Chairman in view of affirmance of the exception of no cause of action which effectively disposes of this entire matter.
Of the several grounds asserted by the contestee in support of his exception of no cause of action, the most serious is the alleged failure of plaintiff’s petition to satisfy the requirement of LSA-R.S. 18:364 in alleging affirmatively he would have been entitled to enter a second primary except for the alleged irregularity and to assert in his petition the specific facts on which such an allegation is based.
The limitation on judicial interference in the elective process of political parties is concisely stated by the Supreme Court in Downs v. Pharis, 240 La. 580, 124 So.2d 553 (1960):
“Initially, it is well to point out that it is the firmly-established jurisprudence that all elections and matters relating to and *269 affecting them belong to the political department of government and are, therefore, ordinarily beyond the control of the judicial power in the absence of special constitutional or statutory authorization. Reid v. Brunot, 153 La. 490, 96 So. 43 and cases there cited.
“Our judicial power in contested election cases emanates from a statute enacted pursuant to Section 12 of Article 8 of our Constitution declaring that ‘The Legislature shall provide by law for the trial and determination of contested elections of all public officers, whether State, district, judicial, parochial, municipal or ward * * * ’. Conformably with this mandate, the Legislature adopted Act 46 of 1940, the provisions of which were incorporated, substantially in their original form, in the Revised Statutes as R.S. 18:281, et seq., * * and the procedures therein contained are sui generis’. See State ex rel. Vullo v. Plaquemines Parish Police Jury, 238 La. 328, 115 So.2d 368, our most recent expression on this subject.
“Hence, it is manifest that one contesting election secures only such rights as are given him by the election laws of the State. ...” [124 So.2d 553, 556, 557]
The principles generally applied by the jurisprudence regarding the conditions precedent to affording relief to a contestant in the election suit are summarized in Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (1958) as follows:
“As a general proposition it may be stated that, in the absence of specific facts giving rise to fraud or which cast uncertainty on the result, irregularities in an election will not affect the validity of a nomination or serve to nullify the result (Daigle v. Mayor and Board of Aidermen of Town of Rayne, 222 La. 556, 62 So.2d 833; Womack v. Nettles, 155 La. 359, 99 So. 290; Andrews v. Blackman, 131 La. 355, 59 So. 769); but the rule is otherwise if a contestant is able to show, upon allegations of specific fraud and irregularities, that but for such fraud and irregularities he would have received a majority of the legal votes cast (Landry v. Ozenne, 194 La. 853, 195 So. 14; Lafargue v. Galloway, 184 La. 707, 167 So. 197); and, as an alternative, it has been recognized that if the Court finds the proven frauds and irregularities are of such a serious nature as to deprive the voters of the free expression of their will, it will decree the nullity of the entire election- — -even though the contestant might not be able to prove that he would have been nominated but for such fraud and irregularities (Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292; Vidrine v. Eldred, 153 La. 779, 96 So. 566). ...” [102 So.2d 755, 762]
LSA-R.S. 18:364(B) in part provides:
“Any candidate for nomination for any office who claims that but for irregularities or fraud he would have been nominated or that he would have been entitled to enter a second primary and desires to contest the election, shall present a petition to the judge of the district court * * *. The petition shall set forth specifically in detail the grounds on which the contest is based and the irregularities or frauds of which complaint is made. . . . ”
It should be noted the quoted portions of the statute require a contestant to set forth specifically in detail the grounds on which the contest is based as well as and in addition to the irregularities or fraud of which the complaint is made.
We interpret this language to require contestant to allege specifically the vote tabulation figures which would be indicative that the loss of 129 votes due to malfunctions of a machine would have affected the outcome of the election or to show the loss of this number is so great in relation to the total number of votes cast in this election that it should be considered a gross irregularity sufficient to warrant the ordering of a new election.
Plaintiff’s petition alleges a general conclusion only as to the effect the irregulari *270 ty would have had on the outcome of this election. There are no allegations showing the total vote cast in this election, nor the votes received by the respective candidates.
In the recent case of Garrison v. Connick, 291 So.2d 778, the Supreme Court overruled the trial and appellate courts’ dismissal of the contestant’s petition for a lack of specificity of the grounds on which the complaint was filed. In its opinion the Supreme Court found it unnecessary to set forth the name of each alleged illegal vote cast as there were some 2,369 votes involved. However, the opinion indicates the contestant had alleged full information regarding vote tabulation which disclosed within his petition how the outcome of the election would have been affected by the irregularity or fraud.
We do not find our conclusions in the instant case contrary to the Garrison decision.
For the foregoing reasons, we conclude the trial judge was correct in sustaining the exception of no cause of action and reiterate our previous decree that the judgment appealed from is affirmed at appellant’s cost.